SEYFARTH SHAW LLP
Laura Wilson Shelby (SBN 151870)
lshelby@seyfarth.com
Jamie C. Chanin (SBN 244659)
jchanin@seyfarth.com
Jennifer J. Wiegley (SBN 262953)
jwiegley@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAD THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. SACV 13-00275 DOC (JPRx)<br><br>[*Hon. David O. Carter, Ctrm 9D*]<br><br>**REPLY BRIEF IN SUPPORT OF COSTCO WHOLESALE CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |
| COSTCO WHOLESALE CORPORATION,<br><br>Cross-Complainant,<br><br>v.<br><br>SHAD THOMAS,<br><br>Cross-Defendant. | [Filed concurrently with Reply to Plaintiff's Opposition to Costco's Separate Statement; Response to Plaintiff's Additional Facts; Objections to Plaintiff's Evidence; Response to Plaintiff's Evidentiary Objections; and Opposition to Request for Judicial Notice]<br><br>Date:      February 24, 2014<br>Time:      8:30 a.m.<br>Ctrm:      9D<br><br>Complaint Filed:      1/10/13<br>Trial:                      4/1/14 |

16821287v.1

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT IN REPLY ...................................................................................... 2

   I.    THOMAS CANNOT MAINTAIN HIS LABOR CODE
        SECTION 1102.5(b) CLAIM FOR RETALIATION BASED
        ON DISCLOSURES TO GOVERNMENT AGENCIES ................... 2

        A.    THOMAS CANNOT DISPUTE THAT COSTCO HAD
              A LEGITIMATE REASON TO TERMINATE HIS
              EMPLOYMENT FOR WILLFUL
              INSUBORDINATION ................................................... 3

        B.    THOMAS DOES NOT HAVE SUBSTANTIAL
              EVIDENCE THAT HIS TERMINATION WAS
              PRETEXT FOR RETALIATION, STEMMING FROM
              HIS COMPLAINTS TO GOVERNMENT AGENCIES ........... 4

              1.    Evidence of Consistently Favorable Treatment
                    from 2009 to 2012 Dispels any Pretext Argument ......... 4

              2.    Comments Cited by Thomas Do Not Create any
                    Issue of Fact Because They Are Either Too
                  Remote in Time, Not Made by Decision-Makers,
                  or Taken Wholly out of Context ..................................... 7

              3.    The Subject Matter of the Shirt Cannot, in and of
                  Itself, Establish Pretext.................................................... 12

              4.    The Timing of Complaints Does Not Support
                  Pretext.............................................................................. 12

                   a.    Because Thomas' Board of Pharmacy
                        Complaint on August 7, 2012 Occurred
                        After Discipline for Insubordination, and No
                        Managers Knew About the Complaint, It
                        Cannot Create a Triable Issue of Fact.................. 12

                   b.    None of the Other Alleged Complaints Are
                        Close Enough in Time to Suggest
                        Retaliatory Motive ................................................ 13

                5.    Irrelevant Information about Criminal Prosecution
                  of Doctors in the Community, Subsequent DEA
                  Investigations of Costco, and Costco's Pharmacy
                  Policies Cannot Create an Issue of Material Fact .......... 15

   II.    THOMAS' CLAIM FOR RETALIATION UNDER LABOR
        CODE SECTION 1102.5(c) FAILS ............................................. 15

   III.   WITHOUT ANY EVIDENCE OF EVIL MOTIVE (MALICE)
        OR DESPICABLE CONDUCT (OPPRESSION), THE CLAIM
        FOR PUNITIVE DAMAGES MUST BE DISMISSED ................... 16

i

16821287v.1

IV.   PLAINTIFF CANNOT NOW CLAIM HE DOES NOT HAVE
      THE DISCOVERY HE NEEDS TO OPPOSE THE MOTION,
      BASED ON HIS NINE-MONTH DELAY IN SEEKING TO
      COMPEL THE DISCOVERY........................................................... 19

CONCLUSION .................................................................................. 20

REPLY BRIEF IN SUPPORT OF COSTCO'S MSJ ON PLTF'S COMPLAINT
CASE NO. SACV 13-00275 DOC (JPRx)

16821287v.1

1

## <u>TABLE OF AUTHORITIES</u>

2

3                                                                                    **Page(s)**

**FEDERAL CASES**

4

5   *Clark Co. School Dist. v. Breeden,*
       532 U.S. 268 (2001) .................................................................. 16

6   *Ramos v. Roche Prods, Inc.,*
       936 F.2d 43, 49 (1st Cir. 1991) ................................................. 13
7

8   *Richmond v. ONEOK, Inc.,*
       120 F.3d 205 (10th Cir. 1997) .................................................. 16

9   *Rivera-Torres v. Rey-Hernandez,*
       502 F.3d 7 (1st Cir. 2007) ......................................................... 20
10

11  *Samuels v. UBS Financial Services, Inc.,*
       2006 U.S. App. LEXIS 17000 (9th Cir. 2006)......................... 14

12  *Shaner v. Synthes (USA),*
       204 F.3d 494, 504-05 (3d Cir. 2000)........................................ 13
13

**STATE CASES**

14

15  *Chen v. County of Orange,*
       96 Cal. App. 4th 926, 948 (2002) ............................................. 13

16  *Martin v. Lockheed Missiles & Space, Co.,*
       29 Cal. App. 4th 1718 (1994)................................................. 4, 7
17

18  *Morgan v. Regents of Univ. of Cal.,*
       88 Cal. App. 4th 52, 70 (2000) ................................................. 13

19  *Scott v. Phoenix Schools, Inc.,*
       175 Cal. App. 4th 702 (2009)................................................... 18
20

21  *Smith v. Brown-Forman Distillers Corp.,*
       196 Cal. App. 3d 503 (1987)............................................... 17, 18

22  *Taylor v. Superior Ct.,*
       24 Cal. 3d 890 (1979) ................................................................ 17
23

**OTHER STATUTES**

24

25  Civ. Code § 3294(c)(1) ...................................................................... 17

26  Labor Code § 1102.5(b) ....................................................................... 2

27  Labor Code § 1102.5(c) ................................................................. 2, 16

28

1    RULES

2    Federal Rule of Civil Procedure 37 ............................................................ 20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

16821287v.1

# **INTRODUCTION**

In July and August of 2012, Thomas was repeatedly insubordinate, and then he was terminated.  Thomas admits that he knowingly disregarded his managers' instructions and was given several chances to save his job if he so chose.   He did not, instead choosing to be terminated and file this lawsuit.  Despite Thomas' Herculean efforts in his Opposition to shift the focus away from his admitted insubordination, the only issue before this Court remains quite straightforward -- do the undisputed facts establish that Thomas was terminated for insubordination?

As made clear by Thomas' own admissions, he was, in fact, insubordinate. He made the conscious decision to keep wearing the same shirt, over and over, after clear instructions not to.  More significantly, he continued to wear the shirt, knowing that it would result in his termination:

> "I didn't know what the outcome of wearing those shirts
> truly was going to be.  **Did I suspect it could have led to**
> **my termination?  Yes.**"

*See* Reply to Plaintiff's Opposition to Costco's Separate Statement of Uncontroverted Facts ("*RUF*") 40 (Plaintiff Depo., 54:21-55:8). Thomas made the choice to disobey clear instructions, not Costco, and he cannot obfuscate his way out of that fact.

While Thomas spends much space in his Opposition focusing on the content of the shirt and exclaiming that he was "just fired over a shirt," his own admissions prove otherwise.  It is undisputed that the first day Thomas wore the "PILLS KILL" shirt, he did not receive any written discipline, but was merely told not to wear it again to work.  It was not until he blatantly ignored managers' instructions, by wearing the exact same shirt again for his very next shift, that he was written up.  He admits that he engaged in the conduct that caused his termination by wearing the "PILLS KILL" shirt twice after being told explicitly not to wear it to work.  He admits that he continued to engage in the conduct after Costco gave him

1

16821287v.1

1   multiple opportunities to cure.  It was this repeated, intentional insubordination that

2   led to his termination, and nothing else.  Even Thomas highlights his

3   insubordination in his own timeline of events, by focusing on the statement made

4   by Jeff Pierini just prior to the termination:  "Even if for some reason the shirt is

5   allowable for pre-opening work, it still does not justify his insubordination."  *See*

6   Opposition, p. 9, lines 20-22 (last fact before termination in Thomas' timeline).

7        To distract from these facts, Thomas goes into great detail about Costco's

8   pharmacy policies and why he believes he was right to complain about them after

9   he left the pharmacy in 2009.  But whether he engaged in a protected activity is not

10  at issue in this motion.  And his diversionary tactics do not create a dispute as to

11  any material issue in this motion.  Certainly, his wild and unsupported speculation

12  that the decision-makers were part of a national scheme to fire him to protect

13  Costco's profits is not sufficient to create a triable issue.

14       Costco respectfully requests that the Court disregard the inflammatory

15  language, the attenuated inferences, the gross mischaracterization of evidence, and

16  the pages and pages of irrelevant information in Thomas' Opposition.  Instead,

17  Costco asks the Court to focus on the undisputed facts and the underlying evidence

18  regarding why Thomas was terminated.   The facts show that this case is really

19  quite simple: Thomas was repeatedly insubordinate, and he was then terminated.

20  Summary judgment is warranted.

21                      **ARGUMENT IN REPLY**

22  **I.   THOMAS CANNOT MAINTAIN HIS LABOR CODE SECTION
23        1102.5(b) CLAIM FOR RETALIATION BASED ON DISCLOSURES
              TO GOVERNMENT AGENCIES**

24       As an initial matter, Thomas refuses to specifically address his claims for

25  retaliation under Labor Code Sections 1102.5(b) and 1102.5(c).  These two code

26  sections give rise to separate claims that have different elements.  Since Thomas

27  failed to provide a clear roadmap, instead choosing to cloud the issues, Costco will

28  again discuss these claims separately.

16821287v.1

## A.   THOMAS CANNOT DISPUTE THAT COSTCO HAD A LEGITIMATE REASON TO TERMINATE HIS EMPLOYMENT FOR WILLFUL INSUBORDINATION

It remains undisputed that Costco had a legitimate and independent reason to terminate Thomas' employment.  Managers explicitly told Thomas not to wear the "PILLS KILL" shirt to work.  *RUF* 36-37.  Thomas chose to ignore this clear instruction, and he wore the shirt again, not once more, but another two times.  *RUF* 38, 47.  Thomas cannot dispute these facts.

It is immaterial that no specific employee outside of management[1] found the "PILLS KILL" shirt to be offensive.  Costco's dress code policy does not require that someone be offended for there to be a violation of the policy.  *RUF* 34.  Indeed, the requirement to wear conservative clothes is designed to prevent the possibility of anyone being offended in the first place.  *Id.*  The dress code also does not provide an exception for employees who work before the warehouse opens or after it closes.  *RUF* 34, 38.  That is because Costco wants to ensure that not just members (customers), but also employees, are not subject to political, controversial or offensive clothing.  *Id.*  Accordingly, these facts to do not create any triable issue of fact as to Costco's legitimate business decision to terminate Thomas.

Moreover, the fact that Executive Vice President and COO of the Southwest Region for Costco, Dennis Zook, is not aware of any other employee who was terminated for wearing a shirt is immaterial.[2]  Thomas was not terminated for wearing a shirt.  He was terminated for repeatedly ignoring management's instructions related to the shirt.  *RUF* 36-40, 47-50.  While other employees have surely violated the dress code and either been verbally warned or received written discipline, it is not surprising that perhaps none of them continued to wear the

---

[1]   Thomas does not accurately explain the evidence on this point.  The evidence cited by Thomas shows that non-management employees (in the pharmacy) were offended by the shirt, but the deponents could not identify any of these individuals by name.  Regardless, this point does not create a triable issue of material fact.
[2]   Thomas takes this testimony, and somehow turns it into the allegation that Thomas was the "first dress code firing in Costco's history."  Thomas' statement is not supported by the evidence.

3

16821287v.1

same clothing that led to the warning, acting repeatedly in an insubordinate manner and instigating termination.  No one who wants to keep their job would do that.

Based on the undisputed facts, the Court must find that Costco had a legitimate business reason for the termination.  Any other conclusion would condone Thomas' conduct and would validate that employees have a free pass to disregard company rules and manager directions, carte blanche, after engaging in a protected activity.  Fortunately, the law does not support such an outcome.

**B.      THOMAS DOES NOT HAVE SUBSTANTIAL EVIDENCE THAT HIS TERMINATION WAS PRETEXT FOR RETALIATION, STEMMING FROM HIS COMPLAINTS TO GOVERNMENT AGENCIES**

To overcome Costco's legitimate reason, Thomas must produce "substantial, responsive evidence" that the decision was motivated by unlawful retaliation. *Martin v. Lockheed Missiles & Space, Co.*, 29 Cal. App. 4th 1718, 1735 (1994). Thomas does not have the necessary substantial evidence of pretext.

1.      Evidence of Consistently Favorable Treatment from 2009 to 2012 Dispels any Pretext Argument

Costco affirmatively addressed its treatment of **Thomas**[3]  between his initial internal complaint in 2009 and 2012, which includes treatment after his March 2010 disclosure to the Bureau of Narcotics Enforcement ("BNE").  Indeed, everything Costco did related to Thomas' employment during that time was either favorable or neutral.  The following chart illustrates the undisputed facts supporting this conclusion:

| DATE | DESCRIPTION |
|---|---|
| Nov. 2009 | Thomas asked to be transferred out of the pharmacy. *RUF* 6. Within a few days, Warehouse Manager Jeff Pierini offered Thomas four other positions, three of which had the same clerk |

---

[3]   To the extent Thomas' chart of what happened during that period includes: (1) actions that involved another employee, Huong Nguyen; and (2) reprimands, suspensions, criminal charges and convictions of doctors, it is utterly immaterial and should be disregarded.

4

| | |
|---|---|
| | rate of pay as his pharmacy job. *RUF* 7. Thomas chose the lower paying associate job,[4] and Costco immediately transferred him to this position. *RUF* 8. |
| Late 2009 - early 2010 | After Thomas raised concerns about errors in his paycheck, Pierini fixed the errors. *RUF* 22. |
| Jan. 2010 | When Thomas requested that his pay be reinstated to the higher clerk level after he submitted his letter complaining about the pharmacy, Pierini raised his pay as requested while Costco investigated the complaint. *RUF* 15-17. |
| Jan. 21, 2010 | Thomas received a "very good" performance evaluation. *RUF* 21. |
| Feb. - March 2010 | Despite upper management deciding that Thomas' pay would go back to the associate level, Pierini waited another month to change Thomas' rate of pay back to the lower associate level so that he would experience less of a decrease in pay. *RUF* 18-19. |
| 2010 | Pierini granted Thomas' request to transfer from the sales floor to a stocking position with a part-time schedule. *RUF* 23. |
| 2010 | Pierini granted Thomas' request to shorten his schedule by one hour, to end at 9:00 a.m. *RUF* 25. |
| 2010 | Pierini granted Thomas' request to be recertified in operating a forklift, which would increase Thomas' rate of pay. *RUF* 26. |
| Dec. 31, 2010 | Thomas received another "incredibly positive" performance evaluation. *RUF* 30. |
| 2011 | When Thomas asked to work more hours, Pierini increased his hours at the Irvine warehouse and sent Thomas to work at another |

---

[4]   Thomas characterizes this as a demotion. His decision to transfer to a lower-paying job, when Costco offered three other positions at the same rate of pay, cannot be attributed to Costco.

5

16821287v.1

| | warehouse for extra hours. *RUF* 27. |
|---|---|
| Nov. 2011 | Pierini notified Thomas of a full-time position he could apply for, knowing that Thomas was interested in a full-time job. *RUF* 28. |
| Dec. 2011 | Thomas received another "very good" performance review. *RUF* 32. |
| Jan. - June 2012 | Costco permitted Thomas to take over six months of medical leave. *RUF* 33. |

This consistent favorable treatment of Thomas, regarding material aspects of his employment, remains undisputed and undermines any notion of pretext.

Moreover, the minor issues Thomas raises are not significant enough to suggest pretext. The fact that Thomas was verbally reprimanded for refusing to spit out his chewing gum when asked to do so by a manager does not raise any triable issue of material fact; to the contrary, it shows that Thomas was prone to insubordinate conduct. Also, a supervisor asking Thomas to check boxes individually on a forklift checklist, rather than draw a line through all of the boxes, was an immaterial non-event, which cannot create any issue of fact. Finally, Costco requesting that Thomas call in to work every day he was going to be out sick, until he turned in a doctor's note, was reasonable and cannot demonstrate retaliatory motive. In light of Costco's favorable treatment of Thomas when it came to important issues -- like pay, positive performance appraisals, schedule changes and medical leave, these inconsequential issues[5] cannot create a triable

---

[5]   Thomas incorrectly states that the chewing gum and checklist incidents led to written discipline. That is not true, and there is no evidence to support it. To the extent Thomas meant to say that these issues were documented in notes that did not go into his personnel file, then that is correct. A company keeping internal documentation on an employee who has complained multiple times is not evidence of pretext, but rather is a good business practice. Moreover, the notes of manager conversations with Thomas date back to at least May 2010. Collins Decl., ¶ 22, Exh. 16. If Costco was using this documentation to "get rid" of Thomas, it would have done so long before August 2012.

6

16821287v.1

1    issue of material fact as to pretext.

2           2.    Comments Cited by Thomas Do Not Create any Issue of Fact
                  Because They Are Either Too Remote in Time, Not Made by
3                 Decision-Makers, or Taken Wholly out of Context

4           Thomas raises a number of comments by Costco employees about his

5    pharmacy complaints as purported evidence of pretext.  These comments, when

6    viewed in context and in the timeline related to the termination decision, cannot

7    create a triable issue of fact.

8           • On January 6, **2010**, Pierini wrote that: "I have an employee,

9    Shad Thomas, who is uncomfortable with the way we fill prescriptions.  H[is]

10   issues are [g]enerally with Laura.  I have a lengthy letter from Shad detailing his

11   concerns.  I addressed most of these issues with Laura [a]bout 6 to 8 weeks ago.  At

12   that time I was comfortable that it basically was a Pharmacist decision. … My

13   concern is that I have not been able to get him to buy off that we are not doing

14   anything illegal and it's a Pharmacist call.  He is basically waiting to see what we

15   do about this before taking stronger measures, whatever that may be."  *See*

16   Response to Plaintiff's Additional Facts ("*RAF*") 12.

17          First, this statement occurred before Thomas' March 2010 complaint to the

18   BNE, and so cannot possibly establish retaliatory motive.  *Id.*  Second, this

19   statement occurred over two-and-a-half years before the termination.  *Id.*  If Pierini

20   had wanted to terminate Thomas for raising the concern and refusing to accept that

21   Costco was not engaging in illegal dispensing practices, Pierini would have done it

22   long before August 2012.

23          • On January 7, **2010**, Pharmacy Manager Laura Knight

24   explained that she was upset "that a pharmacy technician is now questioning the

25   actions of the professional pharmacy staff at Costco."  *RAF* 13 (Collins Dec., ¶ 21,

26   Exh. 15).

27          It is undisputed that only Pierini, Farcone and Zook participated in the

28   termination decision.  *RUF* 53.  This statement by someone who was not involved

7

16821287v.1

1   in the termination decision, and who had no authority over Thomas' employment
2   after November 2009, is immaterial and cannot create a triable issue of material
3   fact. *RUF* 9, 24.

4       • On May 21, **2010**, Pierini noted that Thomas "also mentioned
5   again going to Washington or to the Narcotics board if his situation here doesn't
6   improve." *RAF* 20 (Collins Dec., ¶ 22, Exh. 16).

7       Again, the timing of this note -- over 2 years before the termination -- only
8   serves to defeat Thomas' pretext argument. *Id.* Pierini and Costco knew that
9   Thomas was going to keep raising the pharmacy issues as early as May 2010. If
10  they wanted to terminate him in retaliation for speaking out, they would have done
11  it much closer in time to May 2010.

12      • In **January** 2012, pharmacy technician Jim Childress (who was
13  Thomas' co-worker in the pharmacy) wrote that, after Thomas mentioned a lawsuit
14  either against a doctor or against Costco in conversation, "While we were turning
15  to walk away Shad also made a comment, saying something to the effect 'that if
16  Laura wasn't worried now she soon will be. And said other things but I tuned him
17  out because I felt I heard too much already and knew this was a sore spot with
18  Shad." *RAF* 27 (Collins Dec., ¶ 24, Exh. 18).

19      This comment from a former co-worker of Thomas cannot raise a triable
20  issue of fact as to the reason various managers decided to terminate Thomas'
21  employment. Indeed, Childress' statement reasonably led to Pierini's later
22  comment, addressed below, regarding Thomas' discussion about pharmacy issues
23  making other employees nervous.

24      • On **January** 10, 2012, after Childress raised concerns to Laura
25  Knight about his interaction with Thomas (see above), Knight detailed Childress'
26  concerns and further wrote: "To my knowledge, this investigation was put to rest
27  almost 2 years ago, however Mr. Thomas cannot seem to let it drop. Another
28  employee of mine was approached this morning by another merchandising

8

1    employee wanting to know why Shad left our department in the first place.  This
2    leads me to believe Shad is talking about this with other noninvolved personnel."
3    *RAF* 30 (Collins Dec., ¶27, Exh. 21).

4        It is undisputed that Knight had no authority over Thomas' employment
5    after November 2009.  *RUF* 9, 24.  It is also undisputed that she had nothing to do
6    with the termination decision.  *RUF* 53.  This statement from a non-decision-maker
7    cannot raise a triable issue of fact as to the reason for the termination.  In addition,
8    Knight's statement reasonably led to Pierini's later comment, addressed below,
9    regarding Thomas discussing pharmacy issues with other employees at work.

10       •   On **January** 12, 2012, Pierini wrote that Thomas "did make the
11   comment that he was aware of 'another death caused by our Pharmacy.'  I
12   responded with that is unfortunate.  I mentioned that the comments he has been
13   making around the warehouse has been making a lot of people very nervous.  He
14   mentioned that he was not surprised and that was understandable."  *RAF* 28.

15       This comment does not create any triable issue of material fact.  Based on
16   employee concerns, Pierini was justified in addressing Thomas' comments about
17   the pharmacy and people dying to employees during work hours.  *RAF* 27-28.
18   Nothing about this suggests retaliatory motive.  The timing is important as well, in
19   that this comment made eight months prior to the termination and outside the scope
20   of the termination decision cannot support an inference of pretext.

21       •   On **January** 12, 2012, supervisor Alfredo Rodrigues wrote,
22   based on the conversation he witnessed between Pierini and Thomas mentioned
23   above, that: "He then said towards the end of the conversation that there has been
24   another death.  This isn't the first time I heard that from Shad.  We had a
25   conversation the day prior and he had mention[ed] that he had a lawyer and that he
26   was suing Costco and the Union…because Costco Pharmacy was allowing doctors
27   to write bogus prescriptions and that they were linked to multiple deaths. … I try
28   not to get involved d[ue] to the fact that I have no prior knowledge of what had

9

16821287v.1

1   occurred.  But he is very open about what has happen[ed] and doesn't restrain

2   himself if others are around." *RAF* 29.

3       This statement from a non-decision-maker does not create a triable issue of

4   material fact, and again only confirms that Pierini was reasonable in counseling

5   Thomas on his discussions about the dispensing practices with Costco employees

6   during work.

7       •   On **January** 16, 2012, Pierini wrote:  I'm not sure where

8   [Thomas'] stress is coming from.  I am not aware of any manager or employee

9   giving him a bad time.  Thursday I was trying to let him know about a full-time

10  clerk opportunity, but he was more interested in talking about the lawsuit and

11  Pharmacy issues." *RAF* 31 (Collins Dec., ¶ 28, Exh. 22).

12      This statement does not raise any triable issue of material fact.  It does not

13  suggest retaliatory motive.  If anything, it shows that Pierini wanted to give

14  Thomas the opportunity for the full-time position he had requested.

15      •   On August 2, 2012, manager Blake Johnson wrote:  "Shad

16  stated he would be wearing the shirt 'again and again.'  I asked him more questions

17  regarding the shirt and [told him] that he would be suspended pending termination

18  if he were to wear the shirt again.  He answered in a condescending tone in the

19  affirmative.  I feel he is willing to cross the line again for the cause he feels so

20  deeply about."

21      At this point, Thomas' campaign to get fired had already started.  Johnson

22  merely noting that Thomas' cause of prescription drug abuse was the reason for his

23  behavior does not equate to, or even imply that, Costco terminated Thomas

24  because of his cause.

25      •   On August 9, 2012, Johnson wrote:  "At this point Jeff [Pierini]

26  covered the shirt [Thomas] was wearing was again not appropriate, although

27  different than previous, still inappropriate.  Jeff went into detail noting Shad's

28  ongoing cause of prescription drug abuse and the link to Costco needs to stop.  His

10

16821287v.1

malicious gossip on this matter needs to stop. Costco is not the place for him to broadcast his views on the matter. Shad expressed again that he felt it was not controversial and it was based on facts. Shad also stated he 'will be wearing it again.' Jeff discussed Shad[']s 20 years with the company and we do not wish to terminate, but if this behavior continues he may. Shad responded with a comment of retaliation due to his coming forward with the prescription drug abuse. Shad stated 'this will all come to a head' very soon." *See* Collins Dec., ¶ 42, Exh. 25.

This statement does not create a triable issue of material fact. That Pierini did not want Thomas to raise pharmacy issues to Costco employees during his work as a merchandise stocker does not suggest in any way that Pierini wanted to fire Thomas, but rather that he wanted Thomas to focus on his job while at work and not to distract other employees from doing their job. Indeed, this statement shows that Pierini expressed his lack of desire to terminate Thomas. That is the material takeaway from this statement.

   • On August 13, 2012, when drafting the termination paperwork, Pierini wrote: "This was an example of how I thought we could include the 'Failure to cooperate' and not have it the reason for the term. I'm sure there may be a better way to word it. Not a lot of room on these new forms. It's an important issue for the potential lawsuit, but [I] don't feel it applies as a reason for term...." *RAF* 49.

Nothing about Pierini's email supports Thomas' argument of pretext. Simply deciding what language to use on a termination form, in the most succinct way possible due to lack of space on the form, does not hint at retaliation or pretext. There is no evidence that Pierini was trying to make up a reason for termination. It is undisputed that he had already recommended termination based on Thomas' insubordination. Merely reducing the decision to writing, and figuring out what to include in a document that was sure to be part of a lawsuit, is not evidence of pretext.

16821287v.1

None of the foregoing comments creates a triable issue of material fact that Costco's legitimate decision to terminate Thomas for insubordination in August 2012 was pretext for complaints he raised in 2009, and continued to raise consistently thereafter.  Similarly, none of the comments create a triable issue of material fact that the termination decision was actually motivated by Thomas' March 2010 complaint to the BNE.

### 3. The Subject Matter of the Shirt Cannot, in and of Itself, Establish Pretext

The content of the shirt, and the reason Costco wanted Thomas to stop wearing the shirt, is irrelevant.  It was not the fact of the shirt that led to discipline. Indeed, the first time Thomas wore the shirt on July 27, 2012, he was merely told not to wear it again.  *RUF* 36-37.  He was not terminated on the spot.  *Id.*  It was not until he wore it again on July 30, that Costco disciplined him based on his insubordination.  *RUF* 38-39.  And it was not until the third time he wore the shirt,[6] on August 10, 2012, that Costco decided to terminate his employment. *RUF* 47-50.

If the same set of circumstances occurred, but the shirt was about gun control or said "HEROIN KILLS," then Costco would have reached the same conclusion:  to terminate the employee who willfully and intentionally refused to follow his managers' instructions to not wear that shirt to work.  No pretext can be inferred from that.

### 4. The Timing of Complaints Does Not Support Pretext

**a. Because Thomas' Board of Pharmacy Complaint on August 7, 2012 Occurred After Discipline for Insubordination, and No Managers Knew About the Complaint, It Cannot Create a Triable Issue of Fact**

Costco did not address Thomas' August 7, 2012 letter to the Board of Pharmacy in its motion for two key reasons.  First, there is absolutely no evidence

---

[6]  Notably, Thomas wore a different shirt about prescription drug abuse on August 9, 2012.  *RUF* 51.  He was not written up or terminated for wearing this shirt. *Id.* Rather, Pierini simply asked him not to wear that shirt again to work.  *Id.*  If Pierini wanted to fire Thomas based on him wearing shirts about prescription drug abuse, Pierini would have put the wheels in motion for termination on August 9, 2012.

12

1    that anyone at Costco, let alone the individuals who made the termination decision,

2    knew about this complaint.  Without knowledge of a complaint, there can be no

3    causal nexus to tie the complaint to the termination.  *Morgan v. Regents of Univ. of*

4    *Cal.*, 88 Cal. App. 4th 52, 70 (2000) (employer's knowledge of employee's

5    protected activity essential for finding of causal connection).

6         Second, Thomas' insubordinate conduct and his discipline for that conduct

7    were well under way before August 7, 2012.  It is undisputed that Thomas received

8    a written counseling on July 30, 2012, for wearing the "PILLS KILL" shirt again

9    after being told not to wear it to work.  RUF 36-37.  He therefore cannot claim that

10   his termination for the same conduct was a result of his later complaint.  *See, e.g.,*

11   *Chen v. County of Orange*, 96 Cal. App. 4th 926, 948 (2002) (summary judgment

12   for employer on retaliation claim where employee had been counseled before he

13   engaged in protected activity); *Shaner v. Synthes (USA)*, 204 F.3d 494, 504-05 (3d

14   Cir. 2000) (employee received negative performance review before filing charge of

15   discrimination and then similar ones after the protected activity); *Ramos v. Roche*

16   *Prods, Inc.*, 936 F.2d 43, 49 (1st Cir. 1991) (no retaliation where series of adverse

17   actions began prior to plaintiff's protected activity).

18        His Board of Pharmacy complaint on August 7, 2012 is thus immaterial and

19   cannot create any material issue of triable fact.

20                    b.    None of the Other Alleged Complaints Are Close
                            Enough in Time to Suggest Retaliatory Motive
21
22        Thomas has admissible evidence only that he made reports to two

23   government agencies:  (1) the Bureau of Narcotics enforcement in March 2010;

     and (2) the California Board of Pharmacy on August 7, 2012.  The first complaint
24
     occurred nearly two-and-a-half years prior to Thomas' termination.  And, as noted
25
     above, the decision-makers did not know about the second complaint when they
26
     concluded Thomas should be terminated for insubordination.  No reasonable trier
27
     of fact would infer retaliatory motives from this timing.
28

13

1    The case cited by Thomas regarding temporal proximity, *Samuels v. UBS*
2  *Financial Services, Inc.*, 2006 U.S. App. LEXIS 17000 (9th Cir. 2006), is entirely
3  distinguishable from the instant case.  In *Samuels*, the employee had an exemplary
4  employment history for her entire 11 year employment. *Id.* at *2.  She made a
5  verbal complaint, which she reduced to writing four months later. *Id.* at *2-3.  On
6  the same day she submitted the complaint letter, UBS terminated her employment
7  for an infraction which only led to a reprimand for the other employees involved.
8  *Id.* at *3.  The *Samuels* court concluded that the employee had sufficient evidence
9  of a causal link between her complaints and her termination to defeat summary
10  judgment. *Id.* at *6-8.
11    Here, Thomas provided a letter detailing his complaints in December 2009.
12  *RUF* 15.  He continued to raise those complaints verbally consistently in 2010,
13  2011 and early 2012. *RAF* 12, 16, 18, 20, 23, 27-31.  Then, in July and August
14  2012, Thomas admittedly refused to follow manager instructions. *RUF* 36-40, 47-
15  50.  After giving Thomas numerous chances to comply with the instructions, and
16  Thomas continuing to ignore them, Costco had no choice but to terminate his
17  employment. *Id.*  Thomas has no evidence that any employee who engaged in
18  such insubordination did not meet a similar fate.  This is a far cry from the
19  employee in *Samuels*, who was terminated the same day of her written complaint,
20  in a manner that was inconsistent with how the employer treated similarly situated
21  individuals.   Thomas has no evidentiary support, and no legal support, to establish
22  his theory that Costco terminated his employment as punishment for his complaints
23  to government agencies or any other complaints.  His claim must fail.
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

REPLY BRIEF IN SUPPORT OF COSTCO'S MSJ ON PLTF'S COMPLAINT
CASE NO. SACV 13-00275 DOC (JPRx)

16821287v.1

5.   Irrelevant Information about Criminal Prosecution of Doctors in the Community, Subsequent DEA Investigations of Costco, and Costco's Pharmacy Policies Cannot Create an Issue of Material Fact

Thomas spends the majority of his Opposition outlining alleged unlawful pharmacy practices.  He discusses various doctors being prosecuted for writing bogus prescriptions, other Costco warehouses being investigated by the DEA (notably, not the Irvine warehouse), Costco's pharmacy policies, and an expert report about Costco's purported pharmacy practices in 2009.  Because all of this is wildly irrelevant and so far outside the scope of the case, it should be disregarded.

Significantly, Thomas does not and  cannot connect any of the foregoing with the individuals who made the decision to terminate his employment.  Those individuals -- Jeff Pierini, Frank Farcone and Dennis Zook -- were responsible for general warehouse operations at their assigned level.  *RUF* 50, 52-53 (and supporting declarations).  None of them were pharmacy employees. *Id.* There is no evidence that any of them had knowledge regarding the dispensing practices of Costco's pharmacies.  There is no evidence that any of them received a bonus under the pharmacy bonus program.

The only relevant evidence shows that these decision-makers could not have been financially motivated to protect narcotics sales.  For each decision-maker, sales of all prescription drugs (not just narcotics) account for less than *0.1 percent of their annual compensation*.  *RUF* 52 (and supporting declarations).  Based on this miniscule amount, Thomas' pure speculation that the decision-makers were driven by some grand company-wide conspiracy to protect pharmacy profits is laughable.  No jury would reach an inference of pretext based on Thomas' belief, such that no triable issue of material fact exists.

## II.   THOMAS' CLAIM FOR RETALIATION UNDER LABOR CODE SECTION 1102.5(c) FAILS

Thomas cannot establish the essential prima facie element of a causal connection between his protected activity and his termination.  The protected

15

1    activity contemplated by Section 1102.5(c) is "refusing to participate in an activity

2    that would result in a violation" of law.   Here, Thomas allegedly engaged in that

3    protected activity only once:   when he requested to be transferred out of the

4    pharmacy in 2009.   It is undisputed that Thomas left the pharmacy in November

5    2009 and never worked in the pharmacy again.   *RUF* 6-9, 24.   It follows that

6    Costco never asked him to participate in the alleged unlawful activity at any time

7    after November 2009.   Any subsequent complaint by Thomas about the pharmacy

8    was not a "refusal to participate" in Costco's pharmacy dispensing practices.

9         The single purported protected activity occurred in 2009, more than two

10   years before Thomas' termination.   *See, e.g., Richmond v. ONEOK, Inc.*, 120 F.3d

11   205, 209 (10th Cir. 1997) (cited with approval by *Clark Co. School Dist. v.*

12   *Breeden*, 532 U.S. 268 (2001)) (three-month period between complaint and

13   termination not sufficiently close to establish nexus).   As such, he cannot establish

14   the necessary causal link, and his Section 1102.5(c) claim must fail.

15        Moreover, as explained above, Costco had a legitimate, non-retaliatory

16   reason to terminate Thomas' employment, and Thomas has not offered

17   "substantial" evidence of pretext to surmount that reason.   Thomas has not created

18   any triable issue of material fact on his Section 1102.5(c) claim.

**III.   <u>WITHOUT ANY EVIDENCE OF EVIL MOTIVE (MALICE) OR</u>**
19   **<u>DESPICABLE CONDUCT (OPPRESSION), THE CLAIM FOR</u>**
20   **<u>PUNITIVE DAMAGES MUST BE DISMISSED</u>**

21        "Something more than the mere commission of a tort is always required for

22   punitive damages. There must be circumstances of aggravation or outrage, such as

23   spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or

24   such a conscious and deliberate disregard of the interests of others that his conduct

25   may be called wilful or wanton." *Taylor v. Superior Ct.*, 24 Cal. 3d 890, 894-895

26   (1979).

27        The only remaining claim that could possibly support a finding of punitive

28   damages is Thomas' claim for wrongful termination.   Thus, Thomas must present

1    "clear and convincing" evidence that a managing agent of Costco acted with
2    malice, oppression or fraud related solely to his termination. He cannot come
3    close.

4         Thomas has zero evidence that Costco's pharmacy bonus program had
5    anything to do with his termination. Thomas has zero evidence that the policy
6    related to pharmacists refusing to fill prescriptions had anything to do with his
7    termination. Thomas has zero evidence that pharmacy sales had anything to do
8    with his termination. And Thomas has zero evidence that the penalties assessed
9    against Walgreens by the DEA had anything to do with his termination.

10        Thomas does not, and cannot, argue that Costco acted with intent to harm
11   him or acted in conscious disregard of his rights when it terminated his
12   employment. Civ. Code § 3294(c)(1). Rather, he references "conscious disregard
13   of the *community*'s health and safety" allegedly caused by Costco dispensing
14   narcotics. *See* Opp., p. 19, lines 27-28. He also mentions a formal reprimand
15   based on Costco's pharmacy policies -- not of him, but of *another employee*.
16   Opp., p. 20, lines 8-9. Finally, he argues that Costco assigned the wrong person *in*
17   *2009 and 2010* to investigate his complaints about the pharmacy.   Opp., p. 19,
18   lines 13-16.

19        Thomas cannot ask for punitive damages related to alleged conduct that did
20   not affect him, and that did not have any relation to his termination. Thomas cites
21   to *Smith v. Brown-Forman Distillers Corp.*, 196 Cal. App. 3d 503 (1987) for the
22   proposition that when an employer continues its illegal practices after an employee
23   complains about those practices, a jury could find conscious disregard of the
24   employee's rights. However, *Smith* is distinguishable from this case. In *Smith*, the
25   employer required the employee to commit a crime as a condition of employment.
26   *Smith*, 196 Cal. App. at 511-12.   In response to the plaintiff's concern that he
27   could be personally responsible if he was caught breaking the law, the managers
28   directed him that if he wanted to keep his job, he had to keep doing the illegal

17

1    activities and "not get caught." *Id.* at 511-12.  The *Smith* court, in affirming the

2    jury's award of punitive damages, held that a reasonable trier of fact could find

3    conscious disregard of the plaintiff's rights because the employer "knowingly

4    placed its employees in a situation where they would engage in illegal activities

5    because it wanted to obtain the competitive benefits of such illegal conduct." *Id.* at

6    516.

7         Here, Costco never directed Thomas to engage in any illegal activity.  At the

8    time Thomas complained about the Irvine Costco's pharmacy practices in 2009, he

9    was not even working in the pharmacy.  *RUF* 9, 24.  And he never worked in the

10   pharmacy at any time after his 2009 complaint.  *Id.*

11        Even when Thomas worked in the pharmacy, his ringing up prescriptions

12   and entering data into the computer would not have subjected him to any personal

13   liability.  *RUF* 4.  If anything, this case is closer to *Scott v. Phoenix Schools, Inc.*,

14   175 Cal. App. 4th 702 (2009).  In *Scott*, while there was evidence that the plaintiff

15   was terminated because she refused to do something she thought was illegal, the

16   court concluded that it was a wrongful termination and nothing more, which did

17   not warrant punitive damages.  *Scott*, 175 Cal. App. 4th at 716-17.  In so holding,

18   the *Scott* court noted that the plaintiff was not subject to any personal liability by

19   violating the regulation, and so her rights were not endangered by the employer's

20   failure to comply with the regulation.  *Id.* at 717.  The same is true here:  Thomas'

21   rights were not endangered based on any alleged dispensing practices at the Irvine

22   pharmacy, or any other Costco pharmacy.

23        Thomas is asserting a right to punitive damages based on Costco's alleged

24   treatment of its pharmacists and the community at large, not of Thomas.  Because

25   he cannot show any evidence, let alone clear and convincing evidence, that Costco

26   terminated his employment with malice, oppression or fraud, he cannot maintain

27   his claim for punitive damages.

28

REPLY BRIEF IN SUPPORT OF COSTCO'S MSJ ON PLTF'S COMPLAINT
CASE NO. SACV 13-00275 DOC (JPRx)

16821287v.1

**IV.  PLAINTIFF CANNOT NOW CLAIM HE DOES NOT HAVE THE DISCOVERY HE NEEDS TO OPPOSE THE MOTION, BASED ON HIS NINE-MONTH DELAY IN SEEKING TO COMPEL THE DISCOVERY**

As another means to distract the Court, Thomas raises discovery issues and his purported inability to oppose Costco's motion for summary judgment without additional information.  His argument fails.

First, Thomas has known Costco's position regarding his overreaching discovery tactics for at least nine months.  Thomas acknowledges that, "**[s]ince the beginning of this case**, Costco has fought hard to narrowly limit the scope of discovery." *See* Opposition, p. 21, lines 26-27 (emphasis added).  This is true. Thomas first requested prescription fill records, historical drug review records, records of drug inventory, patient counseling records, records of dispensing errors, records of pharmacy inspections by any government agency, and pharmacy bonus programs -- for not only the Irvine Costco warehouse, but also another warehouse in Southern California -- in April 2013.  *See* Declaration of Jamie C. Chanin in Support of Joint Stipulation Re: Plaintiff's Motion to Compel, Docket No. 29-13, ¶ 5.  In May and June 2013, Costco objected to these document requests and refused to produce the requested records.  *Id.* at ¶¶ 5-6, Exh. B.  Also in May 2013, Costco initiated the meet and confer process regarding Thomas noticing depositions of pharmacists who never worked at the Irvine pharmacy.  *Id.* at ¶ 7, Exh. 6.  At least 10 times from May 2013 through early December 2013, Costco clearly expressed to Thomas that it would not respond to the pharmacy discovery because there was no link between the individuals who decided on the termination and the requested pharmacy documents and information.  *Id.* at ¶¶ 5-12, Exhs. A-E.

If Thomas thought that he needed any of this pharmacy discovery to oppose Costco's summary judgment motion, he would have filed a motion to compel well before January 27, 2014.  Indeed, Thomas admittedly did not need the requested information and documents to oppose Costco's motion for summary judgment.  On

19

16821287v.1

1   December 16, 2013, one week before the close of discovery, the parties filed a

2   Joint Stipulation to extend deadlines for depositions, for filing summary judgment

3   motions and for filing discovery motions.  *See* Joint Stipulation, Docket No. 20.

4   Thomas' counsel in no way indicated that his ability to respond to Costco's

5   planned motion for summary judgment would be hindered by his not having

6   obtained certain documents or discovery responses from Costco.

7        Second, Thomas has all documents reasonably related to this case.  Thomas'

8   unsupported claims that Costco attempted to hide documents, and that there are

9   documents related to this case that have not been produced, are incorrect.  This is

10  yet another example of Thomas obscuring and twisting the facts.  There were no

11  "secret files."  Two witnesses testified that they maintained manager files on

12  Thomas, but all non-privileged documents from these files were produced long

13  ago.  *See* Declaration of Jamie C. Chanin in Support of Joint Stipulation Re:

14  Plaintiff's Motion to Compel, Docket No. 29-13, ¶¶ 22-24.

15       Accordingly, Thomas has obtained all reasonable and relevant discovery

16  necessary to oppose Costco's motion for summary judgment.  If he truly wanted

17  more, he should have sought court intervention much sooner than he did.  His

18  delay tactics should not serve as a basis to deny Costco's summary judgment

19  motion.  *See, e.g., Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7, 11 (1st Cir. 2007)

20  (affirming summary judgment, despite the plaintiffs' request for additional

21  discovery, in part because plaintiffs had delayed in "avail[ing] themselves of any

22  of the usual remedies for a failure of production during the discovery period," such

23  as a motion to compel under Federal Rule of Civil Procedure 37).

24  / / /

25  / / /

26                              **CONCLUSION**

27       Based on the foregoing, Thomas has failed to create any triable issue of

28  material fact, and the Court should grant Costco's motion for summary judgment

                                   20

16821287v.1

1    in its entirety.  Alternatively, the Court should grant partial summary judgment as

2    it finds appropriate.

3

4    DATED:  February 13, 2014        SEYFARTH SHAW LLP

5

6                           By:   /s/ Jamie C. Chanin

7                               Laura Wilson Shelby

8                               Jamie C. Chanin
                                 Attorneys for Defendant

9                               COSTCO WHOLESALE CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY BRIEF IN SUPPORT OF COSTCO'S MSJ ON PLTF'S COMPLAINT
CASE NO. SACV 13-00275 DOC (JPRx)

16821287v.1