O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SHAD THOMAS,<br><br>    Plaintiff,<br><br><br>    vs.<br><br><br>COSTCO WHOLESALE CORP.,<br><br>    Defendants. | Case No.: SACV 13-0275-DOC (JPRx)<br><br><br><br><br>ORDER DENYING MOTIONS FOR<br>SUMMARY JUDGMENT [26] [28] |

Before the Court are two motions: Defendant Costco Wholesale Corporation's ("Costco's") Motion for Summary Judgment as to Plaintiff's Complaint ("Complaint MSJ") (Dkt. 28) and Costco's Motion for Summary Judgment as to its Cross-Complaint ("Crossclaim MSJ") (Dkt. 26). After considering the motions, oppositions, replies, and all exhibits attached thereto, the Court hereby DENIES both motions.

I.      BACKGROUND

A.  Mr. Thomas' Employment as a Costco Pharmacy Technician

Mr. Thomas started working at Costco in 1992.  Decl. of Shad Thomas ("Thomas Decl.") ¶ 2.  In June of 2000, he began working in the pharmacy at Costco's location in Irvine, California.  *Id.*  On December 1, 2003, Mr. Thomas was promoted to Pharmacy Technician.  *Id.* As a Pharmacy Technician, among other duties, Mr. Thomas accepted prescriptions at the drop-off window, entered prescriptions into the computer, sent claims to insurance companies, and called doctors with refill requests.  Pl.'s Dep. 147:1-3.

B.  Mr. Thomas Files a Report to the Bureau of Narcotic Enforcement

Mr. Thomas believed that Costco's Irvine pharmacy was filling too many prescriptions for narcotics.  Thomas Decl. ¶ 3.  From 2004 to 2009, Mr. Thomas periodically questioned Pharmacy Manager Laura Knight ("Pharmacy Manager Knight") about the Irvine pharmacy's filling of narcotics prescriptions, but his questions and concerns were dismissed.  Thomas Decl. ¶¶ 3-7, 9.

In early November 2009, while Pharmacy Manager Knight was on vacation, a patient tried to refill a prescription for oxycodone early.  *Id.* ¶ 5.  Pharmacist Huong Nguyen ("Pharmacist Nguyen") declined to fill the prescription, and told Mr. Thomas that she reported the incident to the Drug Enforcement Agency ("DEA").  *Id.* ¶ 6.  A DEA agent visited the pharmacy to investigate and recommended that Pharmacist Nguyen contact the California Department of Justice Bureau of Narcotic Enforcement ("Bureau of Narcotic Enforcement").  *Id.*

Pharmacist Nguyen did not call the BNE, but Mr. Thomas did.  *Id.* ¶ 7.

C.  Mr. Thomas Requests a Transfer

Immediately following the incident with Pharmacist Nguyen, Mr. Thomas felt that he could no longer be part of the Costco pharmacy because of its prescription-filling practices.  *Id.* So, he requested a transfer.  *Id.* ¶ 8.

He spoke with Warehouse Manager Jeff Pierini ("Warehouse Manager Pierini"), who asked Mr. Thomas where he wanted to be transferred.  *Id.*  Warehouse Manager Pierini was

"accommodating" and "told [Mr. Thomas] that he would . . . work on trying to find a spot for [him] within the building."  Pl.'s Dep. 338:21-339:1.

Initially, Mr. Thomas told Warehouse Manager Pierini that he deserved a chance at a management position, but Mr. Pierini told him that he looked for people who "don't have attitude."  Thomas Decl. ¶ 8.

Warehouse Manager Pierini offered Mr. Thomas a number of positions, including some that maintained the "Clerk" pay rate, which Mr. Thomas was earning as a Pharmacy Technician.  Pl.'s Dep. 334:17-345:15.  Mr. Thomas declined at least one position with the same pay, Cashier, because he viewed it as a "demotion."  *Id.*  Instead, he elected to be transferred to a part-time Sales Associate position, which offered pay at the "Associate" level, rather than the higher "Clerk" rate offered to Pharmacy Technicians.  Thomas Decl. ¶ 11.

Furthermore, Mr. Thomas requested a specific work schedule because of his family obligations.  Pl.'s Dep. 469:21-470:4.  Warehouse Manager Pierini was, again, "accommodating" as to the work schedule, and gave Mr. Thomas the exact schedule that he requested.  *Id.*

### D.  Mr. Thomas Files a Second Report to the Bureau of Narcotic Enforcement

Approximately a month after he was transferred, in a letter dated December 30, 2009, Mr. Thomas detailed the "reasons why [he] made a decision to remove [himself] from [his] position as a Pharmacy Technician."  *Id.*, Ex. 33 at 1.  Specifically, he identified a number of doctors who he believed were improperly prescribing excessive amounts of narcotics.  *See generally id.*

At Mr. Thomas' request, Warehouse Manager Pierini maintained Mr. Thomas' previous pay rate, pending Costco's investigation of the allegations contained in the letter.  Decl. of Jeff Pierini ("Pierini Decl.") ¶ 7.

On January 6, 2010, Warehouse Manager Pierini wrote an email to his supervisor, in which he stated, "[m]y concern is that I have not been able to get [Mr. Thomas] to buy off that we are not doing anything illegal and it's a Pharmacist call."  Decl. of Richard Collins ("Collins Decl.") ¶ 20.

In February 2010, Mr. Thomas met with Warehouse Manager Pierini, Assistant Manager Ron Hudson, and Costco Regional Pharmacy Supervisor B.J. Min ("Regional Supervisor Min"). Thomas Decl. ¶ 10. Regional Supervisor Min addressed Mr. Thomas's letter line-by-line and dismissed all the concerns that were raised. *Id.* Mr. Thomas warned that if the pharmacy's practices did not change, then he would send his report to "Washington or the Narcotics board[.]" Collins Decl. ¶ 22. Soon thereafter, Mr. Thomas forwarded his December 2009 letter, along with Costco's response, to the Bureau of Narcotic Enforcement. Thomas Decl. ¶ 13.

### E. Mr. Thomas Continues Working for Two More Years

For the next year, Mr. Thomas noticed a number of changes in his interactions with Costco management. First, Warehouse Manager Pierini kept a close watch on Mr. Thomas. For example, he stood 40 feet away from Mr. Thomas and watched everything he did, approached Mr. Thomas when he was interacting with Costco members, and reprimanded Mr. Thomas for not "standing in the right spot." *Id.* ¶ 15. Second, Warehouse Manager Pierini made comments to Mr. Thomas, such as, "you've got a chip on your shoulder," "for mental health, you may want to talk to Costco's Employee Assistance Program," and "who made you the police officer of the pharmacy?" *Id.* ¶ 17. Third, Mr. Thomas' hours fluctuated and there were errors in his paychecks. *Id.* ¶ 17. Nevertheless, Mr. Thomas received a positive performance evaluation in December 2010. *Id.* ¶ 18.

In addition, unbeknownst to Mr. Thomas at the time, Costco managers were documenting, through email and memoranda, interactions with Mr. Thomas. Collins Decl. ¶¶ 19-30, 38-41.

During this time, however, Warehouse Manager Pierini also granted a number of Mr. Thomas' requests. First, Mr. Thomas requested a transfer from the sales floor to a stocking position with a part-time schedule, which Warehouse Manager Pierini granted. Pl.'s Dep. 355:23-358:7, 474:18-477:2. Second, Mr. Thomas requested that his shift end an hour earlier than the normal shift end-time, which Warehouse Manager Pierini granted. Pl.'s Dep. 45:1-46:12. Third, Mr. Thomas asked to be recertified in operating a forklift, which Warehouse

Manager Pierini granted.  Pl.'s Dep. 474:18-475:12, 477:3-478:6.  Finally, Mr. Thomas asked to work more hours, and Warehouse Manager Pierini increased Mr. Thomas' hours and permitted him to work additional hours at the Costco warehouse in San Juan Capistrano.  Pl.'s Dep. 480:21-484:22, 515:24-517:16.

In December 2011, Mr. Thomas had a minor forklift accident and was told that he needed to be drug tested, which to his knowledge was not standard procedure.  Thomas Decl. ¶ 21-22.  Around that time, Mr. Thomas was also threatened with being written up for chewing gum during non-store hours and for drawing a line through a checklist, instead of checking each individual box.  *Id.* ¶ 23, 27.  Nevertheless, again, he received a positive end-of-the-year performance evaluation.  *Id.* ¶ 24.

### F.  Mr. Thomas Wears a New T-Shirt to Work

On July 27, 2012, Mr. Thomas wore a t-shirt to work during non-store hours, with a picture of a crying doctor in jail and the words "JUSTICE" and "PILLS KILL."  Pl.'s Dep. 46:13-16, 64:8-66:9.  He explained that it was his "new work shirt."  *Id.*

Over Mr. Thomas' years at Costco, he typically wore a plain polo-style shirt or plain t-shirt.  Pierini Decl. ¶ 6.  Costco has a dress code applicable to "All Employees" that states: "Pictures or writing on shirts or blouses must be conservative and must not contain political or controversial subject matter."  Pl.'s Dep. 265:9-267:21.  However, other employees wore political or potentially controversial t-shirts, such as those bearing the images of President Obama, Corona beer, or Bob Marley.  Thomas Decl. ¶ 30.  According to Costco's Chief Operating Officer, the dress code was "pretty lenient."  Zook Dep. 54:7-10, 14-15, 17-20.

After the first incident, Costco managers verbally warned Mr. Thomas that he should not wear the t-shirt to work again and that, if he did, then he could be disciplined.  Pl.'s Dep. 46:13-48:6, 49:5-9.

### G.  Mr. Thomas Wears the T-Shirt Again, Has a Meeting with Costco
### Management, and Attempts to Record It

When Mr. Thomas reported to work for his next shift on July 30, 2012, he wore the same "PILLS KILL" t-shirt.  Pl.'s Dep. 50:16-51:19, 64:17-65:3.  This time, Costco managers

1  issued disciplinary counseling to Mr. Thomas for insubordination and suspended him from

2  work for three days.  Pl.'s Dep. 52:20-55:10, 68:12-69:17.

3        Mr. Thomas attempted to record the meeting on his cell phone, but later found out that

4  his cell phone did not actually record the conversation.  Thomas Decl. ¶ 32; Pl.'s Dep. 79:19-

5  80:11.

6        When Costco managers learned that Mr. Thomas had attempted to record the July 30

7  meeting, they called another meeting on August 2, 2012.  Thomas Decl. ¶ 33; Pl.'s Dep. 79:4-8,

8  81:4-83:25.  During that meeting, Mr. Thomas reiterated his concerns regarding the pharmacy's

9  practices, and the Costco managers questioned Mr. Thomas about the recording of the previous

10  meeting.  Thomas Decl. ¶ 33.  Mr. Thomas placed his phone on the table and successfully

11  recorded the August 2, 2012 meeting.  *Id.* ¶ 34.  Costco again issued disciplinary counseling to

12  Mr. Thomas for secretly recording the July 30 meeting and suspended him for a few days.  Pl.'s

13  Dep. 79:4-8, 81:4-83:25, 88:3-20.

14        At this point, Mr. Thomas suspected that if he wore the t-shirt to work again, he might

15  be terminated.  Pl.'s Dep. 54:21-55:8.

16        **H. Mr. Thomas Is Terminated**

17        On August 9, 2012, Mr. Thomas attended a meeting with managers wearing a different

18  shirt regarding prescription drug abuse.  Pl.'s Dep. 57:24-58:22, 59:22-60:2, 89:1-8.

19  Warehouse Manager Pierini informed Mr. Thomas that the shirt was borderline controversial

20  and instructed him not to wear it to work.  Pierini Dep. 290:17-292:17, 293:11-295:14.  In

21  addition, Warehouse Manager Pierini issued disciplinary counseling to Mr. Thomas for his

22  failure to cooperate in an investigation regarding the recording of the July 30 meeting.  Pl.'s

23  88:21-25, 92:6-94:5.

24        In an internal memorandum distributed that day, Assistant Warehouse Manager Blake

25  Johnson explained, "Shad's ongoing cause of prescription drug abuse and the link to Costco

26  needs to stop.  His malicious gossip on this matter needs to stop.  Costco is not a place for him

27  to broadcast his views on the matter."  Collins Decl., Ex. 25.

28

The next day, Mr. Thomas came to work wearing the "PILLS KILL" t-shirt. Pl.'s Dep. 104:20-105:7, 106:12-108:1. He was suspended pending possible termination. Pl.'s Dep. 109:2-19.

On his disciplinary paperwork, Mr. Thomas wrote, "when Costco chooses to publicly address curbing the nationwide epidemic of prescription drug abuse, I will stop wearing my shirts." Pl.'s Dep. 106:12-21, 109:2-19. Warehouse Manager Pierini then recommended Mr. Thomas' discharge, and Costco approved. Pierini Dep. 37:4-38:24, 61:8-21. In an email to Regional Vice President Frank Farcone, Warehouse Manager Pierini explained that, "[e]ven if for some reason the shirt is allowable for pre-opening work, it still does not justify his insubordination." Collins Decl., Ex. 26.

Costco managers discussed the wording of the termination form, with Warehouse Manager Pierini stating that, "I'm sure there may be a better way to word it." *Id.* ¶ 44.

On August 15, 2012, Costco terminated Mr. Thomas' employment. *Id.*, Ex. 27. The stated reason for the termination was "Violation of Major #13 'insubordinate conduct' willful refusal to follow instructions of a supervisor." *Id.* Under "details," the form stated, "[o]n August 10th Shad reported to work wearing a shirt stating 'Pills Kill,' after being told on multiple occasions not to do so." *Id.* Costco's Chief Operation Officer testified that he could not recall another occasion in which an employee was terminated for wearing a t-shirt. Zook Dep. 54:7-10, 14-15, 17-20.

## II.    LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating

the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is required only to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III.   ANALYSIS

Mr. Thomas claims that Costco violated California Labor Code section 1102.5 (retaliation against a whistleblower) and wrongfully terminated him in violation of public policy. Costco crossclaims that Mr. Thomas violated California Penal Code section 630 (the California Invasion of Privacy Act) by secretly recording the August 2012 disciplinary meeting. Costco moves for summary judgment on both Mr. Thomas' claims and its own crossclaims.[1]

---

[1] Costco has moved for summary judgment only as to Mr. Thomas' second cause of action—violation of California Labor Code section 1102.5—but not his first cause of action, a common law claim for wrongful termination in violation of public policy. Mr. Thomas' first cause of action for wrongful termination is entirely predicated on a ruling that Costco violated California Labor Code section 1102.5. Given that the Court is denying summary judgment as to the section 1102.5 claim, the distinction between the first and second causes of action is immaterial.

### A.  Retaliation Under California Labor Code Section 1102.5

"[California] Labor Code section 1102.5 is a whistleblower statute, the purpose of which is to 'encourage workplace whistleblowers to report unlawful acts without fearing retaliation.'" *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 287 (2006) (quoting *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 77 (1998)).  The statute enjoins employers from retaliating against employees who report or refuse to engage in illegal activity.  *See* Cal. Lab. Code § 1102.5(b), (c).  Retaliation can be proven through either direct or indirect evidence.  *Mokler v. Cnty. of Orange*, 157 Cal. App. 4th 121, 138 (2007); *Morgan v. Regents of Univ. of California*, 88 Cal. App. 4th 52, 67-68 (2000).

If plaintiffs attempt to prove retaliation through indirect, i.e. circumstantial, evidence, then courts apply the burden-shifting analysis first set forth by the United States Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *See, e.g.*, *Ferretti v. Pfizer Inc.*, No. 11-CV-04486, 2013 U.S. Dist. LEXIS 4730, at *25 (N.D. Cal. Jan. 10, 2013).

First, the plaintiff must establish a prima facie case of retaliation.  *Mokler*, 157 Cal. App. 4th at 138.  To do so, "a plaintiff must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two."  *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005).  "The requisite degree of proof necessary to prove a *prima facie* case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Once established, the defendant must rebut the prima facie case with evidence of a legitimate, non-retaliatory explanation for the adverse employment action.  *Mokler*, 157 Cal. App. 4th at 138.  If the defendant meets that requirement, then the plaintiff must show that the explanation is a pretext for retaliation.  *Id.* (citing *Patten*, 134 Cal. App. 4th at 1384).

#### 1.      Section 1102.5(b)

#### a.  Mr. Thomas' Prima Facie Case

Under California Labor Code section 1102.5:

> An employer, or any person acting on behalf of the employer, *shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency . . .* if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Cal. Lab. Code § 1102.5(b) (emphasis added).  As explained above, in order to establish a prima facie case of retaliation, "[Mr. Thomas] must show (1) []he engaged in a protected activity, (2) h[is] employer subjected h[im] to an adverse employment action, and (3) there is a causal link between the two." *Patten*, 134 Cal. App. 4th at 1384 (citing *Flait v. North Am. Watch Corp.*, 3 Cal. App. 4th 467, 474-75 (1992)).

There appears to be no dispute that Mr. Thomas has offered the "minimal" proof required to show a prima facie case that Costco violated section 1102.5(b).  *See generally* Complaint MSJ, Reply; *see also Wallis*, 26 F.3d at 889.  The Court agrees.  Mr. Thomas presents sufficient evidence to make a prima facie showing that he disclosed information to the Bureau of Narcotic Enforcement and was ultimately terminated because of this disclosure.

### b.  Costco's Proffered Legitimate, Non-Retaliatory Explanation

Under the burden-shifting scheme, defendant-employers have the burden of production to proffer evidence of a legitimate, non-retaliatory reason for the adverse employment action taken against a plaintiff-employee.  *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355-56 (2000); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-512 (1993).

Costco asserts that it terminated Mr. Thomas for repeated, willful insubordination.  Complaint MSJ at 10-11.  In light of the uncontroverted evidence of discipline for Mr. Thomas' prescription drug-related t-shirts and the stated reason on Mr. Thomas' termination form, the Court finds that Costco has carried its burden of production.  *See* Collins Decl., Ex. 27.

### c.  Mr. Thomas' Evidence of Pretext

Once an employer sustains the burden of producing evidence of a legitimate reason, "the presumption of [unlawful retaliation] disappears."  *See Guz*, 24 Cal. 4th at 356 (citing *Hicks*,

509 U.S. at 510-511).  "The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for [unlawful retaliation.]"  *See id.*  Evidence of dishonest reasons, considered together with elements of the prima facie case, may permit a finding of prohibited conduct.  *Id.* (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148-149 (2000)).  The ultimate burden of persuasion on the issue of actual unlawful retaliation remains with the plaintiff.  *See id.*

The plaintiff must "tender a genuine issue of material fact as to pretext in order to avoid summary judgment."  *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).  "This burden is hardly an onerous one: 'the plaintiff who has established a prima facie case need produce very little evidence of discriminatory motive to raise a genuine issue of fact' as to pretext."  *Payne*, 113 F.3d at 1080 (quoting *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995)).  If, however, the plaintiff relies solely on circumstantial evidence, then he "must produce 'specific, substantial evidence of pretext.'"  *Godwin*, 150 F.3d at 1121 (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996)).

Costco argues that Mr. Thomas has not produced sufficient evidence of pretext because he was terminated nearly three years after he filed his report with the Bureau of Narcotic Enforcement and, in the intervening years, Costco favorably treated Mr. Thomas.  Complaint MSJ at 11-12.

"Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases."  *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003); *but see Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1070 (9th Cir. 2003) (noting that "timing, standing alone, may be insufficient to raise a genuine issue with respect to pretext").  In *Coszalter v. City of Salem*, the Ninth Circuit explained:

We . . . reject any bright-line rule about the timing of retaliation. *There is no set time beyond which acts cannot support an inference of retaliation*, and there is no set time within which acts necessarily support an inference of retaliation. *Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances.* In some cases, the totality of the facts may form such a clear picture that a district court would be justified in granting summary judgment, either for or against a plaintiff, on the issue of retaliatory motive; *but the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment.*

320 F.3d 968, 978 (9th Cir. 2003) (emphasis added).

Mr. Thomas reported the pharmacy's activities to the Bureau of Narcotic Enforcement in November 2009.[2] Thomas Decl. ¶ 6. He was terminated in August 2012. Collins Decl., Ex. 27. It is true that there is nearly a three-year gap between Mr. Thomas' initial protected activity and the adverse employment action.

But, the mere absence of temporal proximity is far from conclusive. Mr. Thomas offers direct evidence of pretext in the form of an internal memorandum distributed a week before Mr. Thomas' termination, in which the Assistant Warehouse Manager explained that, "[Mr. Thomas'] ongoing cause of prescription drug abuse and the link to Costco needs to stop. His malicious gossip on this matter needs to stop. Costco is not a place for him to broadcast his views on the matter." Collins Decl., Ex. 25. It is ambiguous as to whether this statement refers only to Mr. Thomas' discussions with other Costco employees, or whether it refers to all of Mr. Thomas' activities linking Costco to prescription drug abuse—including his report to the Bureau of Narcotic Enforcement. Even ambiguous language can constitute direct evidence. *See, e.g.*, *Sischo-Nownejad v. Merced Cmty. College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)

---

[2] Mr. Thomas asserts that just eight days before he was terminated, he submitted a formal written complaint to the Board of Pharmacy. Opp'n at 16; Thomas Decl. ¶ 36. However, this cannot constitute an adverse employment action for two reasons. First, there is no evidence that Costco knew of this complaint. *See Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 70 (2000). Second, Costco was already in the process of terminating Mr. Thomas when he filed the complaint. *See Chen v. Cnty. of Orange*, 96 Cal. App. 4th 926, 948 (2002).

(direct evidence of sex stereotyping where employee referred to female plaintiff as an "old warhorse").  A jury could reasonably find that the Costco manager's email was referring to *all* of Mr. Thomas' activities related to his "ongoing cause of prescription drug abuse and the link to Costco[,]" including his reports to government agencies.  Therefore, on this basis alone, Mr. Thomas has satisfied his burden of producing the "very little" direct evidence necessary to raise a genuine issue of fact as to pretext.  *See Payne*, 113 F.3d at 1080;

Furthermore, Mr. Thomas offers specific, substantial indirect evidence of pretext.  First, Mr. Thomas offered testimony that he was singled out for close supervision, being reprimanded for seemingly trivial matters such as chewing gum and filling in checkboxes incorrectly.  *See, e.g.*, Thomas Decl. ¶¶ 15, 23, 27.  Second, he offered testimony that managers made disparaging comments as to his concerns regarding the pharmacy's practices, such as implying that Mr. Thomas needed mental health services.  Thomas Decl. ¶ 17.  Third, there is evidence that other employees were not disciplined, or threatened with discipline, for wearing inappropriate clothing.  Mr. Thomas testified that other employees wore political or potentially controversial t-shirts—such as those bearing the images of President Obama, Corona beer, or Bob Marley—and were not disciplined or warned.  Thomas Decl. ¶ 30.  In addition, Costco's Chief Operating Officer described the dress code as "pretty lenient" and could not recall another occasion in which an employee had been terminated for wearing a t-shirt.  Zook Dep. 54:7-10, 14-15, 17-20.

To be sure, Costco has offered uncontroverted evidence that it has treated, at least on some occasions, Mr. Thomas favorably and, perhaps, patiently.  Mr. Thomas twice testified that Warehouse Manager Pierini was "accommodating" as to both Mr. Thomas' initial transfer request and his request for certain work hours.  Pl.'s Dep. 338:21-339:1, 469:21-470:4.  Furthermore, over the years after Mr. Thomas' protected activity, Warehouse Manager Pierini granted a number of Mr. Thomas' requests, including a move from a sales to a stocking position in 2010, a part-time schedule in 2010, an earlier end to Mr. Thomas' shift to accommodate family obligations, becoming recertified in driving a forklift, and being

1   scheduled for more hours in 2011.  Pl.'s Dep. 355:23-358:7, 474:18-477:2, 45:1-46:12, 474:18-

2   475:12, 477:3-478:6, 480:21-484:22, 515:24-517:16.

3         But, the question is not whether Costco has offered substantial indirect evidence that it

4   acted *without* a bad motive; the question is whether Mr. Thomas has offered substantial indirect

5   evidence that Costco acted *with* a bad motive.  *See Godwin*, 150 F.3d at 1121.  The relative

6   strength of each party's case is a question for the jury, not for this Court at summary judgment,

7   to decide.

8         It is enough at this stage that Mr. Thomas has offered sufficient evidence in two ways:

9   by providing at least "very little" direct evidence and by providing "specific and substantial"

10  indirect evidence.  The rest is for a jury to decide.  Therefore, the Court DENIES Costco's

11  Motion for Summary Judgment as to Mr. Thomas' claim for retaliation under Labor Code

12  Section 1102.5(b).

13              **2.      Section 1102.5(c)**

14        Under California Labor Code section 1102.5(c):

15        An employer, or any person acting on behalf of the employer, *shall not retaliate*

16        *against an employee for refusing to participate in an activity that would result in a*

17        *violation of state or federal statute*, or a violation of or noncompliance with a

18        local, state, or federal rule or regulation.

19  Cal. Lab. Code § 1102.5(c) (emphasis added).

20        Courts analyze claims under section 1102.5(c) under the same burden-shifting scheme as

21  for claims under section 1102.5(b).  *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1199

22  (2012).

23        Costco's argument against Mr. Thomas' section 1102.5(c) claim is nearly identical to its

24  argument against Mr. Thomas' section 1102.5(b) claim, except that it asserts that Mr. Thomas

25  failed to set out a prima facie case because of an absence of temporal proximity.  *See*

26  Complaint MSJ at 13-14.  However, as explained above, the mere absence of temporal

27  proximity does not preclude a causal connection between Mr. Thomas' report to the Bureau of

28  Narcotic Enforcement and his termination.  *See Coszalter*, 320 F.3d at 978 ("[T]he length of

time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment").

Furthermore, as explained above, there is sufficient evidence for a jury to reasonably find that Costco's proffered reason is pretextual.  Therefore, the Court DENIES Costco's Motion for Summary Judgment as to Mr. Thomas' claim for retaliation under Labor Code Section 1102.5(c).

### B. Punitive Damages

Punitive damages are available for both Mr. Thomas' common law claim for wrongful termination in violation of public policy and his claim for violation of California Labor Code section 1102.5.  *See, e.g.*, *Teutscher v. Riverside Sheriffs' Ass'n*, 2013 U.S. Dist. LEXIS 63238, at *2-3 (May 1, 2013) (discussing a jury award of punitive damages for claims of wrongful termination and violation of Labor Code section 1102.5); *Hennighan v. Insphere Ins. Solutions, Inc.*, 2013 U.S. Dist. LEXIS 58888, at *17-18 (N.D. Cal. Apr. 24, 2013) (noting that punitive damages are available for retaliation claims under Labor Code section 1102.5 and for common law wrongful termination in violation of public policy); *Clemens v. Prot. One, Inc.*, 2010 U.S. Dist. LEXIS 35636, at *7 (S.D. Cal. Apr. 12, 2010) (noting that "a violation of California Labor Code § 1102.5 allows for the imposition of punitive damages"); *see also* Cal. Civ. Code § 3294.

Under California Civil Code section 3294, punitive damages may be awarded "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice[.]"  Cal. Civ. Code § 3294(a); *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009) (examining punitive damages for wrongful termination in violation of public policy).  "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; "fraud" means intentional misrepresentation, deceit, or concealment that deprives a person of property or legal rights; and "malice" means conduct that is intended to cause injury to the plaintiff or despicable conduct that is carried out with a willful and conscious disregard of the rights or safety of others.  Cal. Civ. Code § 3294(c).  In other words,

1    "[s]omething more than the mere commission of a tort is always required for punitive

2    damages[.]"  *Taylor v. Sup. Ct.*, 24 Cal. 3d 890, 894-95 (1979).

3         Costco argues that this case is closest to *Scott*, in which the California appellate court

4    held that punitive damages were not warranted for a successful claim of wrongful termination.

5    *See* Reply at 18; *see also* 175 Cal. App. 4th at 717.  However, there, the employer-defendant

6    made no attempt to hide the reason for why it terminated the employee-plaintiff and did not

7    "engage[] in a program of unwarranted criticism to justify her termination."  175 Cal. App. 4th

8    at 717.  Unlike the defendant in *Scott*, Mr. Thomas has offered evidence that Costco managers

9    singled him out for criticism ever since he reported the pharmacy's activities to the Bureau of

10   Narcotic Enforcement.  For example, Mr. Thomas testified that he was threatened with

11   discipline for chewing gum, not "standing in the right spot," and drawing a line through a

12   checklist instead of marking each checkbox.  Thomas Decl. ¶¶ 15, 23, 27.  In short, there is a

13   material issue of fact as to whether Costco "engaged in a program of unwarranted criticism of

14   [Mr. Thomas'] job performance to justify [his termination]," which would constitute

15   "oppressive" conduct.  *See Stephens v. Coldwell Bank Comm. Group*, 199 Cal. App. 3d 1394,

16   1403 (1988).  Therefore, the Court DENIES Costco's Motion for Summary Judgment as to Mr.

17   Thomas' claim for punitive damages.[3] [4]

18         **C.  Crossclaim for Invasion of Privacy**

19         Costco also moves for summary judgment on its crossclaim that Mr. Thomas violated

20   California Penal Code section 630 (the California Invasion of Privacy Act) by secretly

21   recording the August 2012 disciplinary meeting.

22

23   [3] Punitive damages may be awarded if an action is taken with "conscious disregard of the rights or safety of others[.]"  *See*
     Cal. Civ. Code § 3294(c) (defining "malice").  The thrust of Mr. Thomas' claim for punitive damages is that Costco's

24   prescription-filling policy was instituted with "conscious disregard of the community's health and safety."  Opp'n at 19-21.
     But, the question here is whether Mr. Thomas' termination—not the underlying basis for Mr. Thomas' report—is despicable

25   conduct carried out with conscious disregard for the rights or safety of others.  Notwithstanding Mr. Thomas' extensive
     briefing, Costco's prescription-filling policy is relevant to this action only insofar as it speaks to the reasonableness of Mr.

26   Thomas' report to the Bureau of Narcotic Enforcement.  *See* Cal. Lab. Code § 1102.5(b) (requiring that the whistleblower
     have "reasonable cause to believe that the information discloses a violation of [the law]").  The Court rejects the argument

27   that Costco's termination of Mr. Thomas constituted despicable conduct taken with conscious disregard for the rights and
     safety of others.
     [4] The Court rejects Mr. Thomas' argument that the summary judgment motion should be denied because of Costco's

28   "discovery abuses[.]"  *See* Opp'n 21-24.  The Court makes no ruling on questions of discovery.  A separate motion to
     compel is set to be heard before Judge Rosenbluth on February 27, 2014.

The California Invasion of Privacy Act protects an individual's right to privacy by requiring that all parties consent to a recording of their conversation. Cal. Pen. Code § 630 *et seq.*; *Flanagan v. Flanagan*, 27 Cal. 4th 766, 769 (2002). The statute provides a private right of action, through which plaintiffs may recover five-thousand dollars, in addition to triple the actual damages sustained. Cal. Pen. Code § 637.2(a). In order to prevail, plaintiffs must show that the defendant: (1) intentionally, (2) without the consent of all the parties, (3) recorded by means of any electronic amplifying or recording device, (4) a confidential communication. Cal. Pen. Code § 632(a).

A claim under section 632 must be filed within one year. Cal. Code Civ. Proc. § 340; *Ion Equipment Corp. v. Nelson*, 110 Cal. App. 3d 868, 880 (1980). The limitations period runs from the date the plaintiff knew or should have known of the secret recording. *Ion Equipment*, 110 Cal. App. 3d at 880-881) (applying the discovery rule to claims under section 632). "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). The rule does not apply where plaintiffs "have information of circumstances to put them *on inquiry* or if they have *the opportunity to obtain knowledge* from sources open to their investigation." *Id.* (quotation marks and citations omitted).

On July 30, 2012, Mr. Thomas attempted to record the first meeting with Costco managers regarding his "PILLS KILL" t-shirt. Thomas Decl. ¶ 32. On August 2, 2012, Assistant Warehouse Manager Johnson called Mr. Thomas in to another meeting to discuss the t-shirt incident and allegations by Mr. Thomas' co-worker that Mr. Thomas had recorded the July 30, 2012 meeting. *Id.* ¶ 33. Mr. Thomas placed his phone on the table and recorded the conversation. *Id.* ¶ 34. Assistant Warehouse Manager Johnson wrote a summary of the meeting, explaining that:

> Throughout the interview[,] [Mr. Thomas] again had his phone face down in front of him while he was in the room and also removed it with him as he made a photocopy of the suspension regarding the [July 30, 2012] recording. Upon re-

1    entering the room[,] he place[d] the phone back on the desk face down, just to his

2    left.

3    Collins Decl., Ex. 2.

4         Costco filed its crossclaim for invasion of privacy on August 7, 2013. *See generally*

5    Crossclaim (Dkt. 17). Costco argues that the limitations period did not begin to run until June

6    27, 2013, when Mr. Thomas admitted in a deposition that he recorded the August 2012

7    meeting. Crossclaim MSJ at 8. The Court disagrees.

8         The August 2012 meeting was called, in part, because of Costco's reasonable suspicion

9    that Mr. Thomas had secretly recorded a meeting that was held days earlier. One of the two

10   Costco managers present at the meeting noted that Mr. Thomas "*again* had his phone face

11   down in front of him while he was in the room[.]" Collins Decl., Ex. 2 (emphasis added). A

12   reasonable jury could find that when Costco held a second meeting to investigate the secret

13   recording of a first meeting, and Mr. Thomas repeated the same conduct of the first meeting

14   (placing his phone on the table), then it had notice to inquire further as to whether Mr. Thomas

15   recorded the second meeting as well. Therefore, there is a genuine issue of material fact

16   underlying the question of whether Costco's crossclaim is time-barred. *See Fox*, 35 Cal. 4th at

17   807. Accordingly, the Court DENIES Costco's Motion for Summary Judgment on its

18   Crossclaim.

19   ## IV.    DISPOSITION

20        For the reasons explained above, the Court hereby DENIES Defendant Costco

21   Wholesale Corporation's Motion for Summary Judgment as to Plaintiff Shad Thomas'

22   Complaint. Furthermore, the Court DENIES Defendant Costco Wholesale Corporation's

23   Motion for Summary Judgment as to its own crossclaim against Plaintiff Shad Thomas.

24

25        DATED:     March 3, 2014

26                                                    *David O. Carter*
                                                   _____
27                                                       DAVID O. CARTER
                                                    UNITED STATES DISTRICT JUDGE
28