SEYFARTH SHAW LLP
Laura Wilson Shelby (SBN 151870)
lshelby@seyfarth.com
Jamie C. Chanin (SBN 244659)
jchanin@seyfarth.com
Jennifer J. Wiegley (SBN 262953)
jwiegley@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAD THOMAS,<br><br>   Plaintiff,<br><br> v.<br><br>COSTCO WHOLESALE CORPORATION and DOES 1 through 10, inclusive,<br><br>   Defendant. | ase No. SACV 13-00275 DOC (JPRx)<br><br>[*Hon. David O. Carter, Ctrm 9D*]<br><br>**COSTCO'S MEMORANDUM OF CONTENTIONS OF FACTS AND LAW**<br><br>[Local Rule 16-4]<br><br>Complaint Filed: 1/10/13<br>Trial:     3/18/14 |

   Defendant, Costco Wholesale Corporation ("Costco"), submits its Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4.

# TABLE OF CONTENTS

FACT SUMMARY .................................................................................................. 1

    I.    THE BUSINESS OF COSTCO ............................................................. 1

    II.   AFTER COSTCO GRANTS THOMAS' REQUEST TO LEAVE THE PHARMACY, THOMAS LODGES A COMPLAINT ABOUT THE IRVINE PHARMACY IN 2009 .......... 1

    III.  FOLLOWING THOMAS' COMPLAINTS, COSTCO GRANTS EACH OF HIS REQUESTS REGARDING HIS EMPLOYMENT AND COMMENDS THOMAS IN HIS PERFORMANCE REVIEWS. .................................................................. 2

    IV.  THOMAS REPEATEDLY AND INTENTIONALLY ENGAGES IN INSUBORDINATE CONDUCT IN JULY AND AUGUST 2012, LEADING TO HIS TERMINATION. ............. 4

RULE 16-4.1: CLAIMS AND DEFENSES ............................................................ 5

    I.    THOMAS' CLAIMS ............................................................................. 5

    II.   THE ELEMENTS REQUIRED TO ESTABLISH THOMAS' CLAIMS .................................................................................................. 6

    III.  KEY EVIDENCE IN OPPOSITION TO THOMAS' CLAIM ............. 6

    IV.  COSTCO'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES .......................................................................................... 7

    V.   THE ELEMENTS REQUIRED TO ESTABLISH COSTCO'S AFFIRMATIVE DEFENSES ..................................................................................... 7

    VI.  KEY EVIDENCE IN SUPPORT OF COSTCO'S AFFIRMATIVE DEFENSES ..................................................................................... 8

ANTICIPATED EVIDENTIARY ISSUES ............................................................. 8

ISSUES OF LAW .................................................................................................. 10

RULE 16-4.3: BIFURCATION OF ISSUES ........................................................ 11

RULE 16-4.4: JURY TRIAL ................................................................................. 11

RULE 16-4.5: ATTORNEYS' FEES ..................................................................... 11

RULE 16-4.6: ABANDONMENT OF ISSUES .................................................... 11

# FACT SUMMARY

## I. THE BUSINESS OF COSTCO

Costco operates warehouse retail stores, at which only Costco members have shopping privileges. Costco has a pro-employee corporate culture. Part of its Code of Ethics is to "take care of our employees." Unlike most employers, which strive for employment at will, Costco has an Employee Agreement that generally follows progressive discipline and that promises employees (who have passed a 90-day probation) that they will be dismissed only "for good and sufficient cause." Another key feature of the Employee Agreement, consonant with a pro-employee culture, is an Open Door Policy that encourages employees to take complaints to higher levels of management as necessary.

## II. AFTER COSTCO GRANTS THOMAS' REQUEST TO LEAVE THE PHARMACY, THOMAS LODGES A COMPLAINT ABOUT THE IRVINE PHARMACY IN 2009.

In 2003 or 2004, Plaintiff Shad Thomas ("Thomas") was promoted to a Pharmacy Technician position at the Irvine Costco warehouse at a "clerk" rate of pay. In this role, Thomas assisted the pharmacist(s) on duty by accepting prescriptions at the drop-off window, entering the prescriptions into the computer, sending claims to insurance companies and calling doctors with refill requests. From 2004 to 2009, Thomas periodically questioned Pharmacy Manager Laura Knight about the Irvine pharmacy's filling of narcotics prescriptions.

Thomas asked to be transferred out of the pharmacy in November 2009. Within a few days, Costco offered Thomas a number of other positions with a similar schedule to what he worked in the pharmacy: (1) cashier (at the same level of pay as his pharmacy position); (2) tire sales (same pay); (3) marketing (same pay); and (4) sales associate (less pay, as this position was at an "associate" level rather than a "clerk" level). Thomas chose the sales associate job, and Costco immediately transferred him to this position. Thomas never worked in any Costco pharmacy again after November 2009.

After transferring out of the pharmacy, Thomas told Pierini that he was concerned about how the Irvine pharmacy was dispensing narcotics, and Pierini responded that he would take Thomas' complaint to the regional pharmacy manager.

Around December 30, 2009, Thomas submitted a six-page letter to Costco complaining about practices at the Irvine pharmacy. Costco promptly conducted an investigation of Thomas' complaint, including interviewing Thomas and the only two pharmacists who regularly worked in the Irvine pharmacy, Huong Nguyen and Laura Knight. At Thomas' request, his pay was reinstated to the higher "clerk" level during this investigation.

As a result of the investigation into Thomas' complaint, the write-up for Huong Nguyen was removed from her file. In February 2010, Costco notified Thomas that it had concluded its investigation into his letter, that it found no unlawful dispensing practices, and that Thomas would no longer be kept at the "clerk" rate of pay while he was performing an "associate" position. However, Costco waited another month -- until the annual union pay raise went into effect -- to change Thomas' rate of pay back to the lower associate level so that he would experience less of a decrease in pay. Thomas alleges that he then complained to the Bureau of Narcotics Enforcement in March 2010 regarding the alleged unlawful dispensing practices at the Irvine pharmacy.

### III. FOLLOWING THOMAS' COMPLAINTS, COSTCO GRANTS EACH OF HIS REQUESTS REGARDING HIS EMPLOYMENT AND COMMENDS THOMAS IN HIS PERFORMANCE REVIEWS.

Thomas received his 2009 performance evaluation in December 2009 (after he left the pharmacy), and he viewed the evaluation as "very good."

In late 2009 and early 2010, Thomas raised concerns about errors in his paycheck; Pierini ensured that these payroll errors, which had been occurring on occasion since 2008, were fixed.

1    In 2010, Thomas asked to transfer from the sales floor to a stocking
2 position[1] with a part-time schedule; Pierini granted this request. Thomas also
3 asked to have his shift end at 9:00, one hour earlier than the normal shift end time,
4 to accommodate child care issues; Pierini granted this request, even though the
5 9:00 to 10:00 hour was the busiest part of that shift. In addition, Thomas asked to
6 be recertified in operating a forklift in 2010; Pierini granted this request.
7    In 2011, Thomas asked to work more hours; Pierini responded by increasing
8 Thomas' hours at the Irvine warehouse, allowing him to work additional graveyard
9 hours, and sending him to the San Juan Capistrano warehouse to help with that
10 location's reopening. Finally, Thomas asked to be returned to full-time work in
11 November 2011. While there were no full-time positions open at the time of
12 Thomas' request, as soon as a full-time job became available in January 2012,
13 Costco notified Thomas about it. Thomas said he was not interested in this full-
14 time forklift position because it was an evening shift and would not work with his
15 personal schedule.
16    Thomas received another "incredibly positive" performance evaluation for
17 the year 2010. In December 2011, Thomas had a forklift accident, which requires
18 drug-testing for the driver pursuant to Costco policy. Thomas initially refused to
19 be drug-tested. Despite this resistance to follow manager instructions, Thomas
20 received another "very good" performance review for 2011.
21    In mid-January 2012, Thomas requested a leave of absence. Costco
22 permitted Thomas to take all of the leave he requested. While Thomas returned to
23 work for a few days in April 2012,[2] he went right back out on leave, extending the
24 leave multiple times through the end of July 2012.

---

[1] From 2010 through his August 2012 termination, Thomas worked as a stocker in the merchandising department, stocking products onto the shelves and placing merchandise onto the sales floor. During that time, his duties did not involve the pharmacy in any way, nor did he report to any pharmacy management.
[2] During this time period, Thomas had an altercation with two union representatives.

3

## IV. THOMAS REPEATEDLY AND INTENTIONALLY ENGAGES IN INSUBORDINATE CONDUCT IN JULY AND AUGUST 2012, LEADING TO HIS TERMINATION.

Costco's dress code policy provides that clothing worn to work must be conservative and must not contain political or controversial subject matter. In Thomas' 20 years of employment, he typically wore a plain polo-style shirt or plaint t-shirt, and he never had any issues related to the dress code, until July 2012.

On July 27, 2012, Thomas' first day back from medical leave, he wore a shirt to work with a picture of a doctor in jail crying, the word "JUSTICE" over the picture, and the words "PILLS KILL" under the picture. When a manager asked him about the shirt, Thomas responded that this was his "new work shirt." Based on the dress code policy, Costco managers verbally warned Thomas on July 27, 2012 that he should not wear the shirt to work again, and that, if he did so, he could be disciplined.

Instead of returning to work wearing one of his typical plain polo shirts, Thomas decided to wear the same "PILLS KILL" shirt for his very next shift on July 30, 2012. Because he decided to ignore the specific instruction of his managers to not wear the same shirt, Costco issued a disciplinary counseling to Thomas for insubordination and suspended him from work for 3 days. After this first write-up, Thomas admits that he suspected that if he wore that type of shirt to work again, it could lead to his termination.

As Thomas was leaving the warehouse on July 30, he told at least one Costco employee that he had recorded the meeting with managers in which he received the counseling. When Costco learned of this potential recording by Thomas, managers called a meeting on August 2, 2012 to ask Thomas whether he in fact recorded the conversation. Thomas stated both that he refused to answer the manager's questions, and that he denied recording the discussion. Costco issued a disciplinary counseling to Thomas for secretly recording the private conversation (based on its policy prohibiting employees from removing confidential information

from the warehouse) and suspended him for a few days, asking him to return on August 9, 2012. Unbeknownst to the managers conducting the August 2, 2012 meeting, Blake Johnson and Kim Ray, Thomas was recording the meeting. Thomas admits that, during the meeting, he pressed the "record" button on his cellular phone. He successfully recorded this discussion.

On August 9, 2012, Thomas appeared for a meeting with managers again wearing a shirt about prescription drug abuse. Pierini informed Thomas that this shirt was borderline controversial, and that he was not to wear this shirt to work. Pierini also issued a disciplinary counseling to Thomas for his failure to cooperate in an investigation because of his refusal to answer certain questions in the August 2nd meeting.

Unbelievably, Thomas came to work the very next day, August 10, 2012, again wearing the "PILLS KILL" shirt. He was suspended pending possible termination. Thomas wrote on his disciplinary paperwork that "when Costco chooses to publicly address curbing the nationwide epidemic of prescription drug abuse, I will stop wearing my shirts." Pierini then recommended discharge, and Costco approved the termination. On August 15, 2012,[3] Costco terminated Thomas' employment for willful insubordination.

## RULE 16-4.1: CLAIMS AND DEFENSES

### I. THOMAS' CLAIMS

The following claims from Thomas' Complaint remain in the case:

**Claim 1**: Costco retaliated against Thomas for reporting to a governmental agency what he believed to be illegal activity in the Costco Irvine warehouse, in violation of Labor Code section 1102.5(b).

**Claim 2**: Costco wrongfully terminated Thomas in violation of public policy.

---
[3] Thomas came to the termination meeting on August 15, 2012 again wearing a shirt related to prescription drug abuse.

## II. THE ELEMENTS REQUIRED TO ESTABLISH THOMAS' CLAIMS

<u>The elements required to establish Thomas' claim for retaliation under Labor Code 1102.5(b) are:</u>

1. Thomas disclosed information to a government or law enforcement agency (Costco stipulated to this element, so it is not at issue for trial);

2. Thomas had reasonable cause to believe that the information disclosed a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation (Costco stipulated to this element, so it is not at issue for trial);

3. Costco discharged Thomas or subjected him to an adverse employment action because he disclosed the information; and

4. Thomas suffered damages proximately caused by the discharge or adverse employment action.

See Lab. Code §§ 98.6, 1102.5; CACI 2730; *Patten v. Grant Joint Union High School Dist.*, 134 Cal. App. 4th 1378, 1387-88 (2005).

<u>The elements required to establish Thomas' claim for wrongful termination in violation of public policy are:</u>

1. Thomas engaged in a protected activity;

2. Costco subjected him to an adverse employment action such as termination, and;

3. There was a causal link between the two.

See *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005).

## III. KEY EVIDENCE IN OPPOSITION TO THOMAS' CLAIM

Listed below is a brief description of Costco's key evidence in opposition to each of Thomas' claims:

<u>Thomas' claim for retaliation in violation of Labor Code section 1102.5:</u>

1. Testimony regarding Jeff Pierini accommodating Thomas' request to move out of the pharmacy in 2009.

2. Testimony regarding Jeff Pierini accommodating Thomas' position and scheduling requests between 2009 and 2012.

3. Testimony regarding Costco maintaining Thomas' clerk rate of pay during the investigation of the pharmacy, and waiting to remove that rate of pay to lessen the impact on Thomas.

4. Performance evaluations for Thomas for 2009, 2010 and 2011.

5. Written counselings issued to Thomas for his acts of insubordination.

6. Statements from various Costco employees, emails, and memoranda regarding Thomas' behavior between 2009 and his termination.

7. Statements from various Costco employees, emails, and memoranda regarding meetings with Thomas.

<u>Thomas' claim for wrongful termination in violation of public policy:</u>

1. As this claim is entirely predicated on a ruling that Costco violated Labor Code section 1102.5, the key evidence is the same as above.

### IV. COSTCO'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

The following are the affirmative defenses that Costco has pleaded and plans to pursue:

**Defense 1**: Thomas failed to mitigate his alleged damages.

**Defense 2**: Thomas' claims for damages are barred, in whole or in part, because Costco is entitled to an offset for any monies Thomas received from any source after Thomas ceased to be employed by Costco.

### V. THE ELEMENTS REQUIRED TO ESTABLISH COSTCO'S AFFIRMATIVE DEFENSES

<u>The elements required to establish the defense of failure to mitigate damages are:</u>

7

1.   Thomas failure to use reasonable efforts to mitigate damages; and

2.   The amount by which damages would have been mitigated.

See Ninth Circuit Model Jury Instructions, No. 5.3.

The elements required to establish the defense of offset are:

Thomas received monetary or other benefits as a result of being removed from his job (e.g., unemployment benefits or income from new employer).

See *Witt v. Jackson*, 57 Cal. 2d 57 (1961); *Mayer v. Multistate Legal Studies, Inc.*, 52 Cal. App. 4th 1428, 1434 (1997).

## VI.   KEY EVIDENCE IN SUPPORT OF COSTCO'S AFFIRMATIVE DEFENSES

Listed below is a brief description of Costco's key evidence in support of each counterclaim and defense:

Failure to Mitigate Damages defense:

1.   Thomas' testimony about job search efforts after termination from Costco.

2.   Documents produced by Thomas evidencing any job search efforts after termination from Costco.

Offset defense:

1.   Thomas' testimony regarding any monetary or other benefits received after August 11, 2012.

2.   Documents produced by Thomas evidencing any payments or other benefits he received after August 11, 2012.

## ANTICIPATED EVIDENTIARY ISSUES

Thomas has not filed any motions in limine. Costco has filed, and expects Thomas to oppose, the following motions in limine:

1.   A motion to exclude evidence of Costco's size, financial condition, and net worth (including pharmacy profits). Such evidence is not relevant to Thomas' case, and any minimal probative value is outweighed by the danger of unfair prejudice, delay, and confusion. Fed. R. Evid. 401, 402, 403.

2. A motion to exclude evidence of Costco pharmacy policies, practices, bonus information for pharmacy employees, and pharmacy revenue and profits. Such evidence is not relevant to Thomas' case, and any minimal probative value is outweighed by the danger of unfair prejudice, delay, and confusion. Fed. R. Evid. 401, 402, 403.

3. A motion to exclude the testimony and expert report of Thomas' purported pharmacy expert Fred Weissman. Such evidence is not relevant to Thomas' case, and any minimal probative value is outweighed by the danger of unfair prejudice, delay, and confusion. Fed. R. Evid. 401, 402, 403.

4. A motion to exclude testimony by pharmacists working outside of the Irvine pharmacy (specifically Joe Gerosa and Malek Erem), as well as the admission of any and all evidence related to complaints by other pharmacy employees outside of the Irvine pharmacy (including the lawsuit(s) filed by Malek Erem against Costco and alleged complaints by Vincent Dang). Such evidence is not relevant to Thomas' case, and any minimal probative value is outweighed by the danger of unfair prejudice, delay, and confusion. Fed. R. Evid. 401, 402, 403.

5. A motion to exclude evidence of any government agency investigations of Costco pharmacies after Thomas' employment ended and/or outside of the Irvine Costco warehouse where Thomas worked. Such evidence is not relevant to Thomas' case, and any minimal probative value is outweighed by the danger of unfair prejudice, delay, and confusion. Fed. R. Evid. 401, 402, 403.

6. A motion to exclude any and all evidence related to criminal charges against doctors, convictions of doctors, loss of doctor licenses, suspensions from practice and investigations into doctors. Such evidence is not relevant to Thomas' case, and any minimal probative value is outweighed by the danger of unfair prejudice, delay, and confusion. Fed. R. Evid. 401, 402, 403.

7. A motion to exclude any and all evidence related to changes to Costco's pharmacy policies after Thomas left the pharmacy, including the new

controlled substances dispensing policy instituted in June 2013. This is evidence of subsequent remedial measures, which is inadmissible. Fed. R. Evid. 407. In addition, such evidence is not relevant to Thomas' case, and any minimal probative value is outweighed by the danger of unfair prejudice, delay, and confusion. Fed. R. Evid. 401, 402, 403.

8. A motion to exclude the testimony and expert report of Thomas' purported human resources expert Amy Oppenheimer. Ms. Oppenheimer's opinion is not admissible under Federal Rule of Evidence 702. Moreover, her opinion is not relevant to Thomas' case, and any minimal probative value is outweighed by the danger of unfair prejudice, delay, and confusion. Fed. R. Evid. 401, 402, 403.

9. A motion to exclude any and all references to alleged "secret files" or "special files," as well as any reference or implication that Costco allegedly hid documents during this litigation. Such evidence is not relevant to Thomas' case, and any minimal probative value is outweighed by the danger of unfair prejudice, delay, and confusion. Fed. R. Evid. 401, 402, 403.

## ISSUES OF LAW

The only remaining issue of law in dispute is whether the substantial motivating factor behind Thomas' termination was his insubordination, or his complaints about the Irvine pharmacy. Costco contends that *Harris v. City of Santa Monica*, 56 Cal. 4th 203 (2013) applies to this action.

The *Harris* decision addressed the so-called "mixed-motive case," where there is evidence that an adverse employment decision was based on both legitimate and discriminatory motives. In such cases, the California Supreme Court held that a plaintiff cannot recover damages or backpay, even if the plaintiff can establish that discrimination was a substantial motivating factor in terminating the plaintiff, so long as the employer can establish that it would have still terminated plaintiff for legitimate, non-discriminatory reasons. *Id.* at 241.

The California Supreme Court also provided the burden-shifting framework that must govern mixed-motive cases. Unlike the framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the *Harris* framework requires a plaintiff to first prove "by a preponderance of the evidence that discrimination was a substantial factor motivating his or her termination." *Harris,* 56 Cal. 4th at 241. If the plaintiff is able to meet this burden, the employer cannot be liable for damages or backpay if the employer can prove "by a preponderance of the evidence that it would have made the same decision for lawful reasons." *Id.*

## RULE 16-4.3: BIFURCATION OF ISSUES

The Court should bifurcate consideration of punitive damages pending a finding of malice, oppression or fraud, and exclude evidence of Costco's size, net worth, and financial condition until the punitive damages phase of the trial. *See generally* Civ. Code § 3295(d) ("court shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294").

## RULE 16-4.4: JURY TRIAL

Thomas timely requested a jury trial. Costco is not aware of whether Thomas has posted jury fees.

## RULE 16-4.5: ATTORNEYS' FEES

Neither party is entitled to attorneys' fees.

## RULE 16-4.6: ABANDONMENT OF ISSUES

Issues Abandoned by Costco

Costco abandons the following Affirmative Defenses asserted in its Answer:

1. First Affirmative Defense - Failure to State a Cause of Action
2. Second Affirmative Defense - Statute of Limitations
3. Third Affirmative Defense - Failure to Exhaust Administrative

1 Remedies
     4. Fourth Affirmative Defense - After-Acquired Evidence
     5. Sixth Affirmative Defense - Workers' Compensation Act Preemption
     6. Seventh Affirmative Defense - Failure to Take Advantage of Preventive/Corrective Opportunities
     7. Eighth Affirmative Defense - Legitimate Business Justification
     8. Ninth Affirmative Defense - Contributory Fault
     9. Tenth Affirmative Defense - Estoppel
     10. Eleventh Affirmative Defense - Consent and Waiver
     11. Twelfth Affirmative Defense - Unclean Hands
     12. Thirteenth Affirmative Defense - Joint and Several Liability
     13. Fourteenth Affirmative Defense - Managerial Immunity
     14. Fifteenth Affirmative Defense - Scope of Authority
     15. Seventeenth Affirmative Defense - Punitive Damages Unconstitutional[4]

Costco also abandons its Cross-Complaint against Thomas for secretly recording a meeting with managers.

### Issues Abandoned by Thomas

Thomas, in response to Costco's meet and confer efforts on its motion for summary judgment, voluntarily abandoned his claims for:

     1. Age Discrimination (Title VII and California Fair Employment and Housing Act ("FEHA"))
     2. Wrongful Termination under the FEHA and Title VII
     3. Retaliation under the FEHA.

The Court dismissed these claims on January 22, 2014.

---

[4] Costco reserves the right to re-assert its fifteenth affirmative defense in the event the jury awards excessive punitive damages against Costco.

     Also, on March 8, 2014, Thomas indicated that he would not be pursuing a claim under Labor Code Section 1102.5(c).

DATED:  March 10, 2014         SEYFARTH SHAW LLP

By: /s/ Jamie C. Chanin

    Laura Wilson Shelby
    Jamie C. Chanin
    Jennifer J. Wiegley
Attorneys for Defendant
COSTCO WHOLESALE CORPORATION