UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6     O

CIVIL MINUTES – GENERAL

Case No. SACV 13-0275-DOC (JPRx)      Date: August 7, 2014

Title: SHAD THOMAS V. COSTCO WHOLESALE CORPORATION

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER DENYING MOTION FOR NEW TRIAL [174]**

Before the Court is Plaintiff's Motion for New Trial ("Motion" or "Mot.") (Dkt. 174). Having considered the written submissions, the Court DENIES Plaintiff's Motion.

### I. Background

#### a. Facts

Below is the Court's summary of facts, as articulated in its March 3, 2014 order denying Defendant's Motion for Summary Judgment. *See* Order, March 3, 2014 (Dkt. 44).

##### 1. Mr. Thomas' Employment as a Costco Pharmacy Technician

Plaintiff Shad Thomas ("Mr. Thomas") started working at Costco in 1992. Decl. of Shad Thomas ("Thomas Decl.") ¶ 2. In June of 2000, he began working in the pharmacy at Defendant Costco Wholesale Corporation's ("Costco's") location in Irvine, California. *Id.* On December 1, 2003, Mr. Thomas was promoted to Pharmacy Technician. *Id.* As a Pharmacy Technician, among other duties, Mr. Thomas accepted prescriptions at the drop-off window, entered prescriptions into the computer, sent

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-0275-DOC (JPRx)                                            Date: August 7, 2014
                                                                                                                                                             Page 2

claims to insurance companies, and called doctors with refill requests. Pl.'s Dep. 147:1-3.

### 2. Mr. Thomas Files a Report to the Bureau of Narcotic Enforcement

Mr. Thomas believed that Costco's Irvine pharmacy was filling too many prescriptions for narcotics. Thomas Decl. ¶ 3. From 2004 to 2009, Mr. Thomas periodically questioned Pharmacy Manager Laura Knight ("Pharmacy Manager Knight") about the Irvine pharmacy's filling of narcotics prescriptions, but his questions and concerns were dismissed. Thomas Decl. ¶¶ 3-7, 9.

In early November 2009, while Pharmacy Manager Knight was on vacation, a patient tried to refill a prescription for oxycodone early. *Id.* ¶ 5. Pharmacist Huong Nguyen ("Pharmacist Nguyen") declined to fill the prescription, and told Mr. Thomas that she reported the incident to the Drug Enforcement Agency ("DEA"). *Id.* ¶ 6. A DEA agent visited the pharmacy to investigate and recommended that Pharmacist Nguyen contact the California Department of Justice Bureau of Narcotic Enforcement ("Bureau of Narcotic Enforcement"). *Id.*

Pharmacist Nguyen did not call the BNE, but Mr. Thomas did. *Id.* ¶ 7.

### 3. Mr. Thomas Requests a Transfer

Immediately following the incident with Pharmacist Nguyen, Mr. Thomas felt that he could no longer be part of the Costco pharmacy because of its prescription-filling practices. *Id.* So, he requested a transfer. *Id.* ¶ 8.

He spoke with Warehouse Manager Jeff Pierini ("Warehouse Manager Pierini"), who asked Mr. Thomas where he wanted to be transferred. *Id.* Warehouse Manager Pierini was "accommodating" and "told [Mr. Thomas] that he would . . . work on trying to find a spot for [him] within the building." Pl.'s Dep. 338:21-339:1.

Initially, Mr. Thomas told Warehouse Manager Pierini that he deserved a chance at a management position, but Mr. Pierini told him that he looked for people who "don't have attitude." Thomas Decl. ¶ 8.

Warehouse Manager Pierini offered Mr. Thomas a number of positions, including some that maintained the "Clerk" pay rate, which Mr. Thomas was earning as a Pharmacy Technician. Pl.'s Dep. 334:17-345:15. Mr. Thomas declined at least one

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0275-DOC (JPRx)                          Date: August 7, 2014

Page 3

position with the same pay, Cashier, because he viewed it as a "demotion." *Id.* Instead, he elected to be transferred to a part-time Sales Associate position, which offered pay at the "Associate" level, rather than the higher "Clerk" rate offered to Pharmacy Technicians. Thomas Decl. ¶ 11.

Furthermore, Mr. Thomas requested a specific work schedule because of his family obligations. Pl.'s Dep. 469:21-470:4. Warehouse Manager Pierini was, again, "accommodating" as to the work schedule, and gave Mr. Thomas the exact schedule that he requested. *Id.*

### 4. Mr. Thomas Files a Second Report to the Bureau of Narcotic Enforcement

Approximately a month after he was transferred, in a letter dated December 30, 2009, Mr. Thomas detailed the "reasons why [he] made a decision to remove [himself] from [his] position as a Pharmacy Technician." *Id.*, Ex. 33 at 1. Specifically, he identified a number of doctors who he believed were improperly prescribing excessive amounts of narcotics. *See generally id.*

At Mr. Thomas' request, Warehouse Manager Pierini maintained Mr. Thomas' previous pay rate, pending Costco's investigation of the allegations contained in the letter. Decl. of Jeff Pierini ("Pierini Decl.") ¶ 7.

On January 6, 2010, Warehouse Manager Pierini wrote an email to his supervisor, in which he stated, "[m]y concern is that I have not been able to get [Mr. Thomas] to buy off that we are not doing anything illegal and it's a Pharmacist call." Decl. of Richard Collins ("Collins Decl.") ¶ 20.

In February 2010, Mr. Thomas met with Warehouse Manager Pierini, Assistant Manager Ron Hudson, and Costco Regional Pharmacy Supervisor B.J. Min ("Regional Supervisor Min"). Thomas Decl. ¶ 10. Regional Supervisor Min addressed Mr. Thomas's letter line-by-line and dismissed all the concerns that were raised. *Id.* Mr. Thomas warned that if the pharmacy's practices did not change, then he would send his report to "Washington or the Narcotics board[.]" Collins Decl. ¶ 22. Soon thereafter, Mr. Thomas forwarded his December 2009 letter, along with Costco's response, to the Bureau of Narcotic Enforcement. Thomas Decl. ¶ 13.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-0275-DOC (JPRx)                                                    Date: August 7, 2014

                                                                                                                                                          Page 4

### 5.      Mr. Thomas Continues Working for Two More Years

For the next year, Mr. Thomas noticed a number of changes in his interactions with Costco management. First, Warehouse Manager Pierini kept a close watch on Mr. Thomas. For example, he stood 40 feet away from Mr. Thomas and watched everything he did, approached Mr. Thomas when he was interacting with Costco members, and reprimanded Mr. Thomas for not "standing in the right spot." *Id.* ¶ 15. Second, Warehouse Manager Pierini made comments to Mr. Thomas, such as, "you've got a chip on your shoulder," "for mental health, you may want to talk to Costco's Employee Assistance Program," and "who made you the police officer of the pharmacy?" *Id.* ¶ 17. Third, Mr. Thomas' hours fluctuated and there were errors in his paychecks. *Id.* ¶ 17. Nevertheless, Mr. Thomas received a positive performance evaluation in December 2010. *Id.* ¶ 18.

In addition, unbeknownst to Mr. Thomas at the time, Costco managers were documenting, through email and memoranda, interactions with Mr. Thomas. Collins Decl. ¶¶ 19-30, 38-41.

During this time, however, Warehouse Manager Pierini also granted a number of Mr. Thomas' requests. First, Mr. Thomas requested a transfer from the sales floor to a stocking position with a part-time schedule, which Warehouse Manager Pierini granted. Pl.'s Dep. 355:23-358:7, 474:18-477:2. Second, Mr. Thomas requested that his shift end an hour earlier than the normal shift end-time, which Warehouse Manager Pierini granted. Pl.'s Dep. 45:1-46:12. Third, Mr. Thomas asked to be recertified in operating a forklift, which Warehouse Manager Pierini granted. Pl.'s Dep. 474:18-475:12, 477:3-478:6. Finally, Mr. Thomas asked to work more hours, and Warehouse Manager Pierini increased Mr. Thomas' hours and permitted him to work additional hours at the Costco warehouse in San Juan Capistrano. Pl.'s Dep. 480:21-484:22, 515:24-517:16.

In December 2011, Mr. Thomas had a minor forklift accident and was told that he needed to be drug tested, which to his knowledge was not standard procedure. Thomas Decl. ¶ 21-22. Around that time, Mr. Thomas was also threatened with being written up for chewing gum during non-store hours and for drawing a line through a checklist, instead of checking each individual box. *Id.* ¶ 23, 27. Nevertheless, again, he received a positive end-of-the-year performance evaluation. *Id.* ¶ 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0275-DOC (JPRx)            Date: August 7, 2014
           Page 5

### 6.     Mr. Thomas Wears a New T-Shirt to Work

On July 27, 2012, Mr. Thomas wore a t-shirt to work during non-store hours, with a picture of a crying doctor in jail and the words "JUSTICE" and "PILLS KILL." Pl.'s Dep. 46:13-16, 64:8-66:9. He explained that it was his "new work shirt." *Id.*

Over Mr. Thomas' years at Costco, he typically wore a plain polo-style shirt or plain t-shirt. Pierini Decl. ¶ 6. Costco has a dress code applicable to "All Employees" that states: "Pictures or writing on shirts or blouses must be conservative and must not contain political or controversial subject matter." Pl.'s Dep. 265:9-267:21. However, other employees wore political or potentially controversial t-shirts, such as those bearing the images of President Obama, Corona beer, or Bob Marley. Thomas Decl. ¶ 30. According to Costco's Chief Operating Officer, the dress code was "pretty lenient." Zook Dep. 54:7-10, 14-15, 17-20.

After the first incident, Costco managers verbally warned Mr. Thomas that he should not wear the t-shirt to work again and that, if he did, then he could be disciplined. Pl.'s Dep. 46:13-48:6, 49:5-9.

### 7.     Mr. Thomas Wears the T-Shirt Again, Has a Meeting with Costco Management, and Attempts to Record It

When Mr. Thomas reported to work for his next shift on July 30, 2012, he wore the same "PILLS KILL" t-shirt. Pl.'s Dep. 50:16-51:19, 64:17-65:3. This time, Costco managers issued disciplinary counseling to Mr. Thomas for insubordination and suspended him from work for three days. Pl.'s Dep. 52:20-55:10, 68:12-69:17.

Mr. Thomas attempted to record the meeting on his cell phone, but later found out that his cell phone did not actually record the conversation. Thomas Decl. ¶ 32; Pl.'s Dep. 79:19-80:11.

When Costco managers learned that Mr. Thomas had attempted to record the July 30 meeting, they called another meeting on August 2, 2012. Thomas Decl. ¶ 33; Pl.'s Dep. 79:4-8, 81:4-83:25. During that meeting, Mr. Thomas reiterated his concerns regarding the pharmacy's practices, and the Costco managers questioned Mr. Thomas about the recording of the previous meeting. Thomas Decl. ¶ 33. Mr. Thomas placed his phone on the table and successfully recorded the August 2, 2012 meeting. *Id.* ¶ 34. Costco again issued disciplinary counseling to Mr. Thomas for secretly recording the July 30 meeting and suspended him for a few days. Pl.'s Dep. 79:4-8, 81:4-83:25, 88:3-20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-0275-DOC (JPRx)                                                         Date: August 7, 2014
                                                                                                                                 Page 6

At this point, Mr. Thomas suspected that if he wore the t-shirt to work again, he might be terminated. Pl.'s Dep. 54:21-55:8.

### 8. Mr. Thomas Is Terminated

On August 9, 2012, Mr. Thomas attended a meeting with managers wearing a different shirt regarding prescription drug abuse. Pl.'s Dep. 57:24-58:22, 59:22-60:2, 89:1-8. Warehouse Manager Pierini informed Mr. Thomas that the shirt was borderline controversial and instructed him not to wear it to work. Pierini Dep. 290:17-292:17, 293:11-295:14. In addition, Warehouse Manager Pierini issued disciplinary counseling to Mr. Thomas for his failure to cooperate in an investigation regarding the recording of the July 30 meeting. Pl.'s 88:21-25, 92:6-94:5.

In an internal memorandum distributed that day, Assistant Warehouse Manager Blake Johnson explained, "Shad's ongoing cause of prescription drug abuse and the link to Costco needs to stop. His malicious gossip on this matter needs to stop. Costco is not a place for him to broadcast his views on the matter." Collins Decl., Ex. 25.

The next day, Mr. Thomas came to work wearing the "PILLS KILL" t-shirt. Pl.'s Dep. 104:20-105:7, 106:12-108:1. He was suspended pending possible termination. Pl.'s Dep. 109:2-19.

On his disciplinary paperwork, Mr. Thomas wrote, "when Costco chooses to publicly address curbing the nationwide epidemic of prescription drug abuse, I will stop wearing my shirts." Pl.'s Dep. 106:12-21, 109:2-19. Warehouse Manager Pierini then recommended Mr. Thomas' discharge, and Costco approved. Pierini Dep. 37:4-38:24, 61:8-21. In an email to Regional Vice President Frank Farcone, Warehouse Manager Pierini explained that, "[e]ven if for some reason the shirt is allowable for pre-opening work, it still does not justify his insubordination." Collins Decl., Ex. 26.

Costco managers discussed the wording of the termination form, with Warehouse Manager Pierini stating that, "I'm sure there may be a better way to word it." *Id.* ¶ 44.

On August 15, 2012, Costco terminated Mr. Thomas' employment. *Id.*, Ex. 27. The stated reason for the termination was "Violation of Major #13 'insubordinate conduct' willful refusal to follow instructions of a supervisor." *Id.* Under "details," the form stated, "[o]n August 10th Shad reported to work wearing a shirt stating 'Pills Kill,' after being told on multiple occasions not to do so." *Id.* Costco's Chief Operation Officer testified that he could not recall another occasion in which an employee was terminated for wearing a t-shirt. Zook Dep. 54:7-10, 14-15, 17-20.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-0275-DOC (JPRx)                                               Date: August 7, 2014
                                                                                                                                            Page 7

### b. Procedural History

After the Court denied Costco's motion for summary judgment, the action went to trial. Trial ran from March 18, 2014 to March 25, 2014, at which point the jury entered a verdict in Costco's favor. *See* Verdict (Dkt. 120).

Plaintiff Shad Thomas now moves for a new trial.

## II. Legal Standard

Rule 59 provides that a new jury trial may be granted under certain conditions. Fed. R. Civ. P. 59(a). This is left to the sound discretion of the trial court. *See Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278, 109 S. Ct. 2909, 2921 (1989). Bases for a new trial include: (1) a verdict against the clear weight of the evidence, *see Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987); (2) evidence, discovered after trial, that would not have been uncovered earlier through the exercise of due diligence and that is of such magnitude that its production at trial would likely have changed the outcome of the case, *see Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992-93 (9th Cir. 2001) (quoting *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000)); (3) jury misconduct, *see United States v. Romero-Avila*, 210 F.3d 1017, 1024 (9th Cir. 2000); and (4) error in law that has substantially prejudiced a party, *see Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

## III. Discussion

### a. Weight of the Evidence

Mr. Thomas argues that the verdict was against the clear weight of the evidence because he was fired for protected activity. Mot. at 5. Costco argues that the evidence demonstrates termination for non-retaliatory reasons, such as dress code violations and secret recordings of meetings with managers. Opp'n at 1, 6. The Court agrees.

When considering a motion for a new trial pursuant to Rule 59, courts evaluate whether the verdict is against the clear weight of the evidence. *Landes*, 833 F.2d at 1371. The task of weighing conflicting evidence and making credibility determinations is the job of the jury and not the court. *Lucent Techs., Inc. v. Microsoft Corp.*, 837 F. Supp. 2d 1107, 1126 (S.D. Cal. 2011). Thus, courts will grant motions for a new trial only when the court has given full respect to the jury's findings but is left with the firm conviction

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-0275-DOC (JPRx)                               Date: August 7, 2014

Page 8

that a mistake has been made. *Landes*, 833 F.2d at 1371–72; *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

Mr. Thomas argues that his activity involved protected conduct. Mot. at 7–8. Courts apply the test from *O'Day v. McDonnell Douglas Helicopter Co.* to determine whether or not an employee's "opposition" conduct constitutes "protected activity." 79 F.3d 756, 763 (9th Cir. 1996). The test requires that courts balance (1) the protection of persons engaging reasonably in activities opposing discrimination and (2) the interests of employers in the objective selection and control of personnel. *See id.* An employee's discipline is "deserved" if the employee's activity unreasonably interferes with the employer's interest in maintaining a "harmonious and efficient workplace." *See Garner v. Motorola, Inc.*, 95 F. Supp. 2d 1069, 1080–81 (D. Ariz. 2000); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1080 (9th Cir. 1996) (noting that plaintiff "refused to perform her duties in accord with her instructions [and] did things she was prohibited from doing"). When a motion for a new trial is based on the weight of the evidence, the plaintiff must overcome a "stringent standard." *Ace v. Aetna Life Ins.*, 139 F.3d 1241, 1248 (9th Cir. 1998).

The jury, after a fair trial, concluded that the weight of the evidence showed that Mr. Thomas was fired because he refused to abide by Costco's dress code, ignored Costco's repeated requests for him to cease wearing the "JUSTICE-PILLS KILL" shirt, and intentionally caused disruption amongst the workplace. The jury's finding—that Mr. Thomas's choice to wear a deliberately controversial t-shirt was unprotected activity—was not against the clear weight of the evidence. *See Landes*, 833 F.2d at 1372; *see also Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (noting that the district court has the duty to grant the motion only "where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence").

### b. Jury Instructions

Mr. Thomas argues that a new trial is necessary because the mixed-motive and business judgment jury instructions were given erroneously, as there was "no other independent reason for terminating [Plaintiff]." Mot. at 3 (internal quotation marks omitted).[1] Costco argues that there are multiple possible motivations for termination and that Mr. Thomas did not show that the jury instruction in fact prejudiced them. Opp'n at 10–11. The Court agrees.

---

[1] Because the parties' dispute over the business judgment instruction is the same factual and legal analysis as that of the mixed-motive jury instruction, the Court limits its reasoning to the latter.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 13-0275-DOC (JPRx) | Date: August 7, 2014 |
| | Page 9 |

In cases in which there is a "mix of discriminatory and legitimate reasons," a mixed-motive jury instruction is proper. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 215 (2013). While mixed-motive jury instructions allow for an employer to assert an affirmative defense to bar certain types of relief, the affirmative defense should be rejected by the jury when the plaintiff establishes that discrimination toward the protected content played a "*substantial* motivating factor" in the employment action. *Id.* at 232 (emphasis added); *see also Mendoza v. W. Med. Ctr. Santa Ana*, 222 Cal. App. 4th 1334, 1341 (2014) ("Requiring the plaintiff to show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor, more effectively ensures that liability will not be imposed based on evidence . . .unrelated to the disputed employment decision.") (internal quotation marks omitted). Thus, for a Rule 59 motion for a new trial to be granted, the plaintiff must show, by a preponderance of the evidence, that they were substantially prejudiced by a legal error committed by the Court in giving the mixed-motive jury instruction.

In the instant case, the mixed-motive jury instruction was proper. Mr. Thomas has failed to demonstrate by a preponderance of the evidence that Costco's choice to terminate Mr. Thomas was for the "one" reason of whistleblowing. Costco put forth independent reasons explaining its termination decision, including Mr. Thomas's "various acts of insubordination, his unlawful recording of a private conversation, and his failure to answer questions during [Costco's] investigation into that recording." Opp'n at 12. Even if these causes arose from the same content—protected or not—Costco's reasons for terminating Mr. Thomas constitute legitimate reasons. Accordingly, a mixed-motive jury instruction is proper.

Even if the mixed-motive jury instruction was not proper, however, Mr. Thomas fails to demonstrate that he was prejudiced by the instruction. In the Ninth Circuit, a new trial cannot be granted for instructional error unless the court determines that its error has resulted in prejudice. *Dang v. Cross*, 422 F.3d 800, 811 (9th Cir. 2005) ("An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless.") (quoting *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992)). A verdict after an erroneous jury instruction is reversible when it is "more probable than not" that the error prejudicially affected it. *Galdamez v. Potter*, 415 F.3d 1015, 1025 (9th Cir. 2005) (quoting *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005)).

Here, the verdict form—to which parties stipulated—makes it impossible for the Court to evaluate the reasons for why the jury found in Costco's favor; the jury could have found that Costco terminated Mr. Thomas for a legitimate reason or it could have

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. SACV 13-0275-DOC (JPRx) | Date: August 7, 2014 |
| | Page 10 |

found that Mr. Thomas failed to establish any illegitimate reason at all. *See* Verdict. The jury simply found in favor of Costco. *Id.*

Finally, Mr. Thomas argues that because the mixed-motive jury instruction was never intended to be a complete bar to liability, a new trial is necessary because the instruction does not allow Mr. Thomas to recover alternative forms of relief. Mot. at 16; Reply at 12. However, Mr. Thomas could have sought declaratory and/or injunctive relief, even if he could not seek attorney's fees. *See Alamo v. Practice Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 478–82 (2013) (finding that an employee can still be awarded relief where appropriate with a mixed-motive jury instruction on a wrongful termination claim).

### c. Evidence of DEA Search

Mr. Thomas argues that a new trial should be granted because "the jury was invited to decide the case based on a falsehood—it was urged to believe that [Mr. Thomas's] many complaints were meritless because the DEA had reviewed them and decided to take no action." Mot. at 20. The Court disagrees.

The evidence of the DEA search is not of the "magnitude that its production at trial would likely have changed the outcome of the case." *See Far Out*, 247 F.3d at 993.

### d. Discovery

Mr. Thomas also argues that certain testimony by Costco's witnesses was prejudicial because Costco refused to produce certain documents. Mot. at 20. Costco argues that it was never asked the "relevant question" that would have otherwise compelled Costco to hand over information concerning the "decision-makers' bonuses attributable to sales of controlled substances." Opp'n at 15. The Court agrees.

Even if Mr. Thomas is correct that the testimony at issue constitutes "surprise testimony" that warrants sanctions, the issuance of sanctions, by themselves, does not warrant a new trial. *See Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 542, 545 (N.D. Cal. 2009) (merely discussing the imposition of sanctions for failure to release relevant electronic discovery information and not about this failure being grounds for a new trial). Otherwise, Mr. Thomas offers no reason why a new trial should be granted on this basis.[2]

---

[2] Mr. Thomas further argues that the evidence withheld from them by Costco would have changed the jury's outcome because the jury "should not have received bonus information from [Costco's] witnesses, when [Costco] refused to produce the very documents that (in all likelihood) would have confirmed that their testimony was false." Mot. at 21. While generally applicable to "newly discovered evidence" rather than "withheld evidence," it is well

Case 8:13-cv-00275-DOC-JPR   Document 186   Filed 08/07/14   Page 11 of 11   Page ID #:6959

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-0275-DOC (JPRx)                                              Date: August 7, 2014
                                                                                                          Page 11

### e. Witness Credibility

Finally, Plaintiff argues that Defendant "changed its story" and called previously unnamed witnesses, depriving Plaintiff of due process. Mot. at 23. The Court disagrees.

The jury's verdict can be overturned only when there is a legally sufficient basis for doing so. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000)). At this stage of litigation, it is well-established that the Court cannot replace its own view for that of the jury. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2002). Thus, "credibility, inferences, and factfinding are the province of the jury," not the Court. *Costa*, 299 F.3d at 859.

Mr. Thomas asks that the Court grant a new trial because Costco's witnesses were not credible. Mot. at 22. There is nothing glaringly erroneous in the testimony to suggest a new trial should or could be warranted. Further, if there was any inference to be made that Costco was "changing its story" or being duplicitous with its witnesses' testimonies, it would be for the jury to determine.

### IV. Disposition

For the reasons explained above, the Court DENIES Plaintiff Shad Thomas's Motion for a New Trial in its entirety.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11
CIVIL-GEN                                                                                   Initials of Deputy Clerk: jcb

---

established that (1) evidence that would not have materially changed the result and (2) which in large part was available to the aggrieved party is not grounds for a new trial. *See United States v. Bransen*, 142 F.232, 235 (9th Cir. 1944). Given the tenuous inference made by Mr. Thomas as well as the breadth of evidence available to Mr. Thomas from discovery on the bonuses issue, a new trial is not warranted here.